## JAMES E. LOWE *vs.* ALFRED LOWE ET AL.

*Contracts—Claim for Services Rendered by a Son for His Father—Insufficient Evidence—Competency of Witness—Communication to Attorney.*

After the death of an old man who had lived with one of his sons for many years, the latter was a plaintiff in a bill for the sale of his father's land for the purpose of partition among the children, and at that time made no claim that his father was indebted to him. Two years afterwards a bill was filed by a creditor of the father, and then the son filed the claim in this case, alleging an indebtedness on the part of his father to him for board and lodging during a period of twenty-five years, and for other services. *Held,* that services rendered by one member of a family for another are presumed to be gratuitous, and that in this case this presumption is not rebutted, since the evidence fails to show that at the time of the rendition of the services the son intended to charge for the same or that the father expected to be required to pay, and that consequently no contract, express or implied, existed.

When one party to a contract is dead, the other party is not a competent witness to prove the contract, although he may be competent to testify as to other matters.

A lawyer is not competent to testify as to communications made to him by his client unless with the consent of the client.

*Decided June 30th, 1909.*

Appeal from the Circuit Court for Carroll County (THOMAS, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*D. N. Henning,* for the appellant.

*Jas. A. C. Bond* and *Michael E. Walsh* (with whom were *Ivan L. Hoff* and *F. Neal Parke* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

Nicholas Lowe, a resident of Carroll County, died on the first day of April, 1905, at the age of eighty-one years. For twenty-five years preceding his death he had made his home with his son, James E. Lowe. His wife had died before he went to live with his son. He died intestate, leaving a small personal estate, and about 22 acres of land. He left surviving him children, grandchildren, and great-grandchildren, whose names and places of residence are stated in the record.

On the 11th day of April, 1905, the appellant and other heirs at law of Nicholas Lowe filed a bill in the Circuit Court for Carroll County for the sale of real estate left by his father for partition and division of the proceeds thereof among those entitled to receive the same. Answers were filed, and in due course a decree was passed on the 14th day of July, 1905, directing the property to be sold, and appointed the appellant one of the trustees to make the sale. The trustees sold the property for $1,396.00. The sale was reported to and finally ratified by the Court. Nearly a year after the sale, Andrew Dreschsler, filed a creditor's bill in the cause in which the decree had been passed alleging that Nicholas Lowe at the time of his death was indebted to him and to other persons in large sums of money, and praying that the funds in the hands of the trustees, or so much thereof as might be necessary, be applied to the payment of so much of said indebtedness as remainded unpaid.

On August the 5th, 1907, the appellant filed in the cause the following claim: "The Estate of Nicholas Lowe, deceased.

"To James E. Lowe, for work, labor, lodging, board, goods, materials and money done and furnished the said Nicholas Lowe in his lifetime by said James E. Lowe, at request of said Nicholas Lowe, deceased, as follows:

"To boarding and lodging said Nicholas Lowe
    from May 1st, 1880, to April 1st, 1905, at $75
    per year.................................$1,868.75
To making and mending clothing from May, 1880,
    to April 1st, 1905..........................  300.00
To washing and ironing from May 1st, 1880, to
    April 1st, 1905.............................   50.00
To nursing and care from April 1st, 1900, to
    April 1st, 1905.............................   25.00
To money loaned July 1st, 1901.................   50.00
                                              _____
                                               $2,293.75"

Objections to the allowance of this claim were interposed
by all the heirs at law of Nicholas Lowe. Testimony was
taken before the Auditor for and against the claim. The
Auditor's account C filed in the cause disallowed this claim,
and to this account the appellant excepted; but the lower
Court, after full hearing, overruled his exceptions, and by
its order of August 10th, 1908, finally ratified the account,
and from that order James E. Lowe has brought this appeal.

There are some questions raised upon the record as to the
rulings of the Court upon the exceptions to testimony; but
the main, and practically the only question, is this: Upon the
evidence appearing in this record, ought this claim be al-
lowed? The testimony of James E. Lowe was excepted to,
and was excluded by the Court below. It may be true, as
argued by counsel, that it was error to have excluded his
whole testimony. Under the case of *Smith* v. *Humphreys,*
104 Md. 285, there were some facts to which he was compe-
tent to testify; but he was not competent to prove the con-
tract or agreement between himself and his father, and the
conversations between them on that subject, and those por-
tions of his testimony cannot be considered by us. Such tes-
timony relates to transactions had with, or statements made
by the deceased, and in this proceeding the witness was not
competent under Article 35, section 3 of the Code to prove
them. A number of exceptions to testimony was filed by

James E. Lowe. In disposing of these the Court said, "the exceptions of James E. Lowe, to the testimony of Elizabeth Kelbaugh, Ella Cassell, Jacob Long, Alfred Lowe, Andrew Long, Lewis Green, Robert Green and Jacob D. Leister are entirely too general, and should for that reason be overruled. As was said in the case of *Freeny* v. *Freeny,* 80 Md., page 409, 'every exception should clearly indicate the testimony excepted to, the ground on which the exception is based, and the name or names of the witnesses whose testimony is excepted should be set forth.' But the Court, in disposing of the case, has done so without reference to any of the testimony excepted to, except the testimony of Elizabeth Kelbaugh, Ella Cassell and Alfred Lowe, to statements made by the claimant after the death of the deceased, and the testimony of A. H. Huber, to statements of claimant made to him out of the presence of Mr. Hoff, it will not be necessary to pass upon the claimant's exceptions to other testimony." There was no reversible error in this ruling. The testimony of Ivan L. Hoff was not considered by the Court below, and will not be by us. The communications between him and his client James E. Lowe were confidential and privileged, and, without the consent or waiver of the client, he is not permitted by the law to divulge them.

This Court has been frequently called upon to consider claims of this nature. The general rule to be applied to such claims is well established. The rule stated in *Bantz* v. *Bantz,* 52 Md. 694, and consistently followed in all the cases wherein this Court has had occasion to consider the question, is this: "In order to justify a claim for services being allowed against a decedent, there must have been a design at the time of the rendition to charge, and an expectation on the part of the recipient to pay for the services. The services must have been of such a character and rendered under such circumstances as to fairly imply an understanding of payment, and a promise to pay. There must have been an express or implied understanding between the parties that a charge for the services was to be made, and to be met by payment."

The burden is upon the claimant to satisfy the Court of the existence of the conditions which would authorize the allowance. The presumption of law is that they were gratuitous, and this presumption must be overcome by clear and satisfactory evidence. It is stated in 21 *Am. & Eng. Ency. of Law,* 106, that "the general rule deducible from the authorities is that where a child, after arriving at majority, continues to reside as a member of the family with a parent, or with one who stands in the relation of a parent, or where the parent resides in the family of a child, the presumption is that no payment is expected for services rendered, or support furnished by the one to the other. This presumption is not, however, conclusive, and may be overcome by proof either of an express agreement to pay, or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made. Wherever, therefore, compensation is claimed in any case by either parent or child against the other for services rendered, or the like, the question whether the claim should be allowed must be determined from the particular circumstances of the case. There can be no fixed rule governing all cases alike. In the absence of any direct proof of an express contract, the question to be determined is whether it can be reasonably inferred that pecuniary compensation was in view of the parties at the time when the services were rendered or the support was furnished; and the solution of this question depends on a consideration of all the circumstances of the case."

Tested by this rule, is the evidence sufficient to support this claim? There is no satisfactory evidence in the record of any express contract on the part of Nicholas Lowe at the time he went to live with the appellant that he would pay for the services specified in the account. There is some testimony on this point given by Mrs. Lowe, but it is vague and indefinite. She does not say she was present when the agreement was made, and what she does say is too uncertain and equivocal to fix liability upon the deceased. Asked if her husband and Nicholas Lowe had any arrangement or con-

tract by which he was to live with them, she said: "He come there and got his board and washing, and he was to pay for it *when he could.*" There is a good deal of testimony by the children of the claimant tending to show acknowledgment by the deceased of his indebtedness to his son, and of repeated promises to pay, and if there were nothing in the case to discredit this evidence it might be sufficient to take the case out of the general rule and to allow a recovery upon an implied promise to pay. It is unnecessary for us to analyze or comment upon the testimony of these interested witnesses. They no doubt felt that their father should be paid and we think they have somewhat magnified the services rendered to Mr. Lowe, and minimized very largely his contribution to the support and comfort of the family.

The conduct and declarations of the claimant, it seems to us, are utterly inconsistent with a belief on his part that he had any legal claim against his father. It is not pretended that Nicholas Lowe agreed to pay any definite sum; nor did he ever pay anything to his son during all the years he lived with him. Neither did the claimant, who was a man dependent upon his daily labor for his livelihood, ever present him with an account of his indebtedness, and no account of any kind was ever kept against him. For four or five years the claimant farmed his father's land, had settlements with him and paid over to his father the proceeds of his share of the crops without any deduction on account of his claim. After his father's death in conversation with some of the heirs about the settlement of his estate he made no claim, but stated that he wanted nothing but his share. He became a plaintiff in the case instituted for the sale of the property for purposes of dividing the proceeds thereof among the children of the deceased, and did not file this claim until more than two years after the sale of the property, and not until after the creditors' bill had been filed. This conduct on the part of the claimant cannot be reconciled with the claim he is now making. Its only reasonable explanation is that he had no charge against his father for such services as he had

rendered him, and that he had no intention of seeking pay-
ment therefor.    The conclusion that he had no claim is fur-
ther strengthened by his statement to Mr. Huber that there
was no contract between his father and himself, and that there
was no understanding that he should be paid.    We are not
disposed to relax the salutary rule applicable to cases of this
nature.    We have carefully considered all the evidence prop-
erly in the case, and our conclusion is that the claim of
James E. Lowe is not such as can be enforced against or al-
lowed out of the funds in the hands of the trustees, and the
order appealed from will be affirmed.

*Order affirmed with costs.*