# NORA E. HUFF, ADMINISTRATRIX, *vs.* HARRY M. SIMMERS.

*Action by Son to Recover for Services Rendered to His Mother in Carrying on a Business—Sufficiency of Evidence of Agreement to Pay—Instructions—Evidence of Payment—Admissions Against Interest—Voluntary Payment of Another's Debt.*

In an action by a son against the administrator of his mother's estate to recover for services rendered to her in her lifetime in carrying on a bakery business, the evidence examined held to be sufficient to show a promise on the part of the mother to pay for the services and their rendition by the plaintiff.

In such action, evidence is admissible to show that the plaintiff had presented a claim against his father's estate, and had said at the death of his mother that he had no claim against her estate.

Evidence is also admissible to show that the plaintiff's mother had paid to him certain sums of money in her lifetime, in connection with other evidence tending to show the relation between the parties, and that this payment would ordinarily be made in compensation for services performed.

In an action to recover for services rendered to a decedent, a prayer offered by the plaintiff told the jury that if they found that the decedent promised to pay the plaintiff thirty dollars per month for the work performed by him, or promised to pay him for the work, and shall also find that thirty dollars per month was a reasonable and just compensation for the work performed, then their verdict may be for the plaintiff for such sum as the jury may find to be due for the work. *Held,* that this prayer does not contain conflicting propositions, since the plaintiff would be entitled to recover upon either alternative, according as the jury found that the one or the other was supported by the evidence.

*Held,* further, that this prayer is not in conflict with a prayer granted at the instance of the defendant which instructed the jury that if the decedent did not have a license during the period in which the services sued for were rendered, they might consider that fact in determining the question whether the business in which the services were alleged to have been rendered was conducted by her.

When a party promises to pay for work to be done for another, that constitutes an original undertaking and is not a promise to pay another person's debt.

A person is not entitled to recover money paid for another's benefit unless paid at the request of the latter.

*Decided January 11th, 1911.*

550          HUFF *vs.* SIMMERS.

Appeal from the Circuit Court for Washington County (KEEDY, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and UR-NER, JJ.

*Levin Stonebraker* and *Harvey R. Spessard,* for the appellant.

*Jos. W. Wolfinger* (with whom was *Elias B. Hartle* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee recovered a judgment against the appellant in the Circuit Court for Washington County, and this is the defendant's appeal. It involves the correctness of three rulings made by the lower Court during the progress of the trial upon questions of evidence and instructions to the jury granted at the close of the whole case. As the case must be remanded for a new trial, we will refrain from commenting upon the evidence, except so far as it may be necessary to make clear the reasons upon which our decision rests.

The suit is in assumpsit against the administrator *c. t. a.* of Flora B. Simmers, deceased, who was the mother of the plaintiff. The declaration contained the common counts and one special count, which alleged that Flora B. Simmers on or about the first day of January, 1907, agreed with and promised the plaintiff that if he would conduct and manage the bakery owned and controlled by her she would pay the plaintiff for his services; that he did conduct and manage said bakery until or about January 1st, 1909; but had not been paid for his services thus rendered. The plaintiff filed the following bill of particulars:

"HAGERSTOWN, MD., March 2nd, 1910.

*The Estate of Flora B. ·Simmers,*

                           *To Harry M. Simmers,*                    Dr.

To amount paid Dr. A. A. Lamar for medicine and
  medical service to Flora B. Simmers, during her
  lifetime.....................................$    20.00

To amount paid George B. Oswald, for interest on
  mortgage against Metz Property for Flora B.
  Simmers, during her lifetime.................  180.00

To amount paid D. W. Reichard, Collector of State
  and County Taxes, for 1908 for Flora B. Sim-
  mers, during her lifetime.....................  14.47

To services rendered Flora B. Simmers, during· her
  lifetime, in conducting and managing the bakery
  of the said Flora B. Simmers from the first day
  of January, 1907, to the first day of January,
  1909 (24 months), at $30.00 per month.........  720.00

To amount paid L. J. Orrick on account of Flora B.
  Simmers, during her lifetime.................  99.76

                                                  $1,034.23."

The defendant pleaded the general issue pleas, upon which
issue was joined. No evidence was offered to support the
second and third items of the bill of particulars, and by the
defendant's third prayer, which was conceded, the jury. was
instructed that no recovery could be had for either of these
charges. The evidence shows that Thomas Simmers, the
father of the plaintiff, died on or about the 1st of December,
1907. At the time of his death and for a number of years
prior thereto he was conducting a bakery and small confec-
tionery store at Smithsburg. in Washington County. A trad-
er's license for the conduct of this business had been issued to
him for the six years immediately preceding his death; the
one issued to him in 1907 expired on May 1st, 1908. There
was evidence to the effect that the fixtures and stock in trade

in this store and bakery had been supplied by Mrs. Caroline
Norford, and at the death of Flora B. Simmers, her daugh-
ter, they belonged to her. Mrs. Norford testified that at the
death of her daughter, Mrs. Simmers, the counters, shelving,
appliances and stock in trade belonged to her; that she had
started the store many years ago. Declarations of Flora B.
Simmers were put in evidence to the effect that the fixtures
had been put in by her mother, and that she was to have the
use of them as long as she wanted, and that "if she happened
to die before her mother they were to be her mother's, and
that her mother furnished the money to finish paying for the
stock she bought."

No administration was had upon the estate of Thomas
Simmers, and for the year 1908 (the year succeeding his
death) the license for the conduct of the business was issued
to the plaintiff. Mrs. Simmers died in December, 1908,
leaving a last will and testament in which the plaintiff was
appointed executor, and in the inventory of her personal
estate no return or mention was made of the chattels or stock
in trade of the bakery or store. The plaintiff was removed
by the Orphans' Court of Washington County as executor,
and the appellant was appointed administrator *c. t. a.* of the
estate of Mrs. Simmers. It appears that during the latter
part of the year 1907 Thomas Simmers was in feeble health
and not able to attend to business, and there is evidence on
behalf of the plaintiff that after the death of Thomas Sim-
mers, Mrs. Flora B. Simmers conducted the bakery and store
until her death in December, 1908, although the license was
issued to the plaintiff. The plaintiff produced a number of
witnesses, who testified that during the years 1907 and 1908
the plaintiff did general work in connection with the bakery
and store; that he cut the wood for the oven, did the baking
and attended to the business. Mrs. Virginia Simmers, wife
of the plaintiff, testified that the plaintiff did the work in
connection with the store and bakery; that she heard Mrs.

Simmers ask her husband to do the work and attend to everything; that his father was not able to do anything, and that she would pay him. This, the witness said, was in June, 1907, and that "right after" the death of his father Mrs. Simmers told the plaintiff that if he would stay there and work for her she would pay him thirty dollars per month; that her husband did the work until the business was closed in April, 1910.

Mrs. Norford and James Butts testified that after the death of Thomas Simmers they heard Mrs. Simmers say that she would pay the plaintiff thirty dollars per month for his work. J. L. Orrick, a baker, testified that the work done by the plaintiff was worth eight dollars per week.

This evidence, if believed by the jury, would have entitled the plaintiff to a verdict for the services rendered in pursuance of his mother's promise. Under the pleadings it was competent for the defendant to show either that Mrs. Simmers was never indebted to the plaintiff, or that any indebtedness which may have existed had been wholly or partly paid. Any facts and circumstances from which it might be reasonably inferred that she never owed the plaintiff or that her indebtedness to him, if any existed, had been paid were admissible.

The defendant offered to prove by Mrs. Clarine Norford that on or about February or March, after the death of Mrs. Simmers, the plaintiff "presented a paper to her which he then and there explained was a claim for twenty-five hundred dollars, which he desired to bring against the estate of his mother, Flora B. Simmers, for working and baking for his *father* for fifteen years," and offered to follow this up "by proving by Thomas E. Hilliard, Register of Wills, that in conversation that he had with Mr. Simmers, the plaintiff, in connection with this said alleged claim of twenty-five hundred dollars, that he then and there told the said Harry M. Simmers that it was the custom of the Court, meaning thereby

the Orphans' Court, where an executor presented a bill or claim, to ask him to get the endorsement of the heirs."

The refusal of the Court to permit this evidence to be introduced constitutes the first exception. There is evidence in the record that the plaintiff testified before the Orphans' Court in the proceedings had therein to remove him as executor that "he had no claim at all against his mother's estate." The proffered testimony should have been admitted, as it reflected upon the *bona fides* of the claim made in this suit. It is said in *Brook* v. *Winters,* 39 Md. 505, that "the rule that excludes facts because they are collateral does not apply to facts wherever existing, if they may afford any reasonable presumption as to the matter in dispute. Whether they are facts, before or after the suit, they are admissible if they may illustrate or explain the question in issue."

Counsel for the appellee contended that the evidence was properly excluded because it offends against the rule which forbids offers of compromises to be admitted in evidence. But we do not regard the interview between the plaintiff and Mrs. Norford or the statements made by the plaintiff to her as being within the rule. The sole object which the plaintiff had in mind in approaching the witness was to secure her endorsement of the claim preparatory to its presentation to the Orphans' Court, as he was advised it was customary to do where the executor presented a claim. The facts do not bring the statements within the rule stated in the case of *Reynolds* v. *Manning,* 15 Md. 526; *Biggs* v. *Langhammer,* 103 Md. 102; *Acker, Merrall & Co.* v. *McGaw,* 106 Md. 560, and other cases relating to the inadmissibility of offers to compromise.

The defendant offered to prove by Walter Brenner, the cashier of the Smithsburg Bank, that during the period covered by the bill of particulars the plaintiff had received the proceeds of two checks, aggregating the sum of five hundred and twenty-five dollars, drawn by Flora B. Simmers on the

Smithsburg Bank to the order of the plaintiff; that the plaintiff received in cash from the bank three hundred and fifty dollars, the amount of two of these checks, and that the amount of one check, to wit, one hundred and seventy-five dollars, was deposited to his credit. The Court refused to permit the introduction of this testimony, and this ruling constitutes the second exception.

It is settled in this State that under the general issue ·in *assumpsit* the defendant may offer evidence of payment. 1 *Poe on Pleading,* secs. 607-609; *Seff* v. *Brotman,* 108 Md. 278, and cases therein cited.

It is not claimed that the mother of the plaintiff was ever indebted to him in any way other than as stated in the bill of particulars. The plaintiff was a married man and lived in the same house in which the store and bakery were located. The work he did was principally that of a baker, and the evidence is such that it might be reasonably inferred that he was dependent upon his weekly wages for the support of himself and family. His account allows his mother no credit whatever, and yet during the period he claims to have worked for her he received from her the sums mentioned. In the absence of some explanation, the jury might have well concluded that this money or some part of it was paid for the services sued for. The receipt of the money in connection with the relation of the parties and the financial condition of the plaintiff should have been admitted in evidence.

It has been held that the fact that the plaintiff during the period when he might have enforced his claim by suit, if he had one, was in indigent circumstances and needed the use of the money, is a circumstance tending to justify the presumption that the demand has been paid or otherwise satisfied.

In addition to this circumstance, affording a presumption of payment under the facts in this case, we have the further fact of the actual payment by his mother of substantial sums

of money during the identical period embraced in the bill of particulars.

There was no error in the ruling on the third exception whereby the plaintiff was permitted to say why the license for the year 1908 was taken out in his name. His answer to the excepted question in no way injured the defendant.

This brings us to the rulings on the prayers. The Court granted the plaintiff's first prayer and the defendant's fifth and eighth prayers. The defendant's second, third and fourth prayers were conceded, and his first, sixth, seventh, ninth, tenth and eleventh were refused. The granted and conceded prayers put the case, so far as it related to the recovery for the services sued for, as fairly and as favorably to the jury as the defendant had a right to expect.

The plaintiff's first prayer told the jury that if they believed from the evidence that the defendant's decedent, Flora B. Simmers, promised to pay the plaintiff thirty dollars per month for the work performed by him as testified to and sued for in this case, or promised to pay him for the work performed by him, as testified to and sued for in this case, and shall further find that thirty dollars per month was a reasonable and just compensation for the work thus performed, and shall further find that the plaintiff performed the work as testified to, then their verdict must be for the plaintiff for such sum as the jury may find to be due for the work thus performed. We see no good objection to this prayer. Its postulate in either alternative in which it allowed a recovery was the express promise to pay for the work done by the plaintiff, the amount of the recovery in either event being limited by the prayer to "such sum as the jury may find to be due for the work thus performed."

The appellant contended that the prayer contained conflicting propositions of law, and the case of *Western Maryland Railroad Company* v. *Kehoe,* 83 Md. 551, is relied upon to support this contention. We see no reason for reviewing

that case, which in its facts was wholly dissimilar to this,
as we do not understand that that decision supports the appel-
lant's position. The Court there held that there was no evi-
dence to support the first alternative of the plaintiff's fourth
prayer, and that the failure of the defendant to discover the
perilous situation of the plaintiff under the circumstances
did not constitute negligence on the part of the defendant.
In this case the plaintiff would have been entitled to recover
upon either alternative, if the jury found that one or the
other was supported by the evidence. The prayer does not
contain conflicting propositions, as the one in *Kehoe's case*
did, but merely asserts alternative propositions upon either
of which he might have recovered. Nor is the prayer in con-
flict with the defendant's fifth prayer, which was granted.
That prayer told the jury that if they found that Flora B.
Simmers did not have a license during the period in which
the services sued for were rendered, they might consider that
fact in determining the question as to whether said business
was being conducted by her. The mere fact that she did not
conduct the business would not of itself preclude a recovery.
The defendant's sixth, seventh, ninth, tenth and eleventh
prayers were properly rejected for obvious reasons. As ap-
plied to the facts in the case they were unsound and mis-
leading. The sixth prayer asserted that the plaintiff was
estopped from claiming or contending that Flora B. Sim-
mers was the owner of the business, if they found that he
did not include in the inventory the chattels, &c., in the store
and bakery at the time of her death. The evidence which we
have quoted explains why they were omitted, and tends to
show that they did not belong to the deceased. The seventh
prayer asserted that there was no legally sufficient evidence
in the case to prove that there was a design on the part of the
plaintiff at the time of the rendition of the services to charge
and an expectation on the part of Flora B. Simmers to pay
for the services. The evidence that there was an express

promise by Mrs. Simmers to pay for these services was sufficient to cause the refusal of this prayer. By his ninth prayer the defendant asked the Court to instruct the jury that if they found that Thomas Simmers was the owner in his lifetime of the bakery and store referred to in the evidence, and should further find that he died on or about the 2nd of December, 1907, "then the jury are instructed that the plaintiff is not entitled to recover for any services rendered in connection with the management and conduct of said store and bakery prior to the 2nd day of December, 1907, unless the jury shall further find that the said Flora B. Simmers, deceased, promised in writing to pay for said services, and the jury are further instructed that there is no legally sufficient evidence in this case to prove that the said Flora B. Simmers, deceased, promised in writing to pay for said serv-. ices." Mrs. Virginia Simmers testified that Flora B. Simmers in June, 1907, promised to pay for the work done by the plaintiff. This, if true, constituted an original undertaking on her part, and because of this testimony the prayer could not have been granted. The eleventh prayer asserted that under the pleadings there was no legally sufficient evidence to entitle the plaintiff to recover under the special contract for services. This prayer was properly refused in view of the evidence we have referred to tending to prove a special contract made by Mrs. Simmers with the plaintiff.

The defendant's first prayer should have been granted. The Court was asked by this prayer to instruct the jury that there was no legally sufficient evidence in the case to entitle the plaintiff to recover for any money paid by the plaintiff for or on behalf of Mrs. Simmers. In the bill of particulars there is a charge of twenty dollars paid to Dr. A. A. Lamar for medicine and medical services rendered to Mrs. Simmers during her lifetime. This amount was sought to be recovered under the fifth count of the declaration as money paid by the plaintiff for the deceased in her lifetime at her request. To sustain a recovery under this count it must be alleged and

proved that the money was paid upon the request, express or implied, of Mrs. Simmers. The only evidence in the record relating to this claim is that of Mrs. Virginia Simmers to the effect that the plaintiff got medicine from Doctor Lamar for his mother, and she *thought* she "saw about five dollars paid."

In 1 *Poe on Pleading,* sec. 107, it is said that it is not sufficient to prove the defendant's liability to a third person, and that the plaintiff discharged that liability, for the payment may have been gratuitous or officious; and the mere fact that the defendant derived an advantage from it will not authorize a recovery. If the rejection of this prayer were the only erroneous rulings in the case we would not be disposed to disturb the judgment, as the injury thereby resulting to the plaintiff was slight; but there was serious error committed in the ruling on the first and second exceptions, and the judgment must therefore be reversed and a new trial awarded.

> *Judgment reversed and new trial awarded,
> the appellee to pay the costs.*