HERMAN J. GIERING, Executor of the Last Will and Testament of Joseph X. Giering, Deceased,

*vs.*

NELLIE C. SAUER.

*Claim against estate for services to decedent: compensation; presumption. Evidence: one party dead; suits against executor or administrator; Code, Art. 35, sec. 3; exceptions to evidence of that class; need not be repeated. Experts: qualifications.*

According to the provisions of section 3 of Article 35 of the Code, in a suit against an executor for compensation for board and services, furnished and rendered by the plaintiff to the testator, testimony of the plaintiff as to the services rendered and the compensation received therefor from the testator is inadmissible. p. 297

Where a party objects to the admission of such evidence and his objection is overruled and injurious testimony of any character is admitted to which he excepts, it is not necessary for him to continue to object to like testimony in order to avail himself of his exception. p. 297

Certain witnesses *held* not to be qualified to testify as experts as to the value of board furnished by the plaintiff and services rendered by her to a testator. p. 300

In a suit against an executor for pay for board furnished and services rendered the testator by the plaintiff, who was not a member of his family or in anywise related to him by blood

or affinity, any competent evidence that such board and services were furnished and rendered him by the plaintiff for which one or more witnesses testified that he was to pay a certain sum, should be allowed to go to the jury.　　　p. 301

Where services are rendered by a member of the family to a decedent, the presumption of law arises that such services are gratuitous, but in others such legal presumption does not exist.
　　　　　　　　　　　　　　　　　　　　　p. 303

*Decided April 9th, 1913.*

Appeal from the Baltimore City Court (DAWKINS, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James Fluegel* (with whom was *Edward Schaumloeffel,* on the brief), for the appellant.

*John B. Gontrum* and *Edward L. Ward* (with whom was *John S. Biddison,* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment recovered by the appellee against the appellant in the Baltimore City Court, for board and services alleged to have been furnished and rendered by the appellee to Joseph X. Giering, the appellant's testator.

The case was heard by a jury which rendered a verdict for the plaintiff for the sum of $600, upon which a judgment was entered for that amount. In the course of the trial eleven exceptions were taken to the rulings of the Court upon the admission or rejection of the testimony, one to its rulings upon the prayers, and another upon the ruling of the Court in refusing to inform the jury that certain testimony referred to by counsel for the appellee in his argument to the jury, had been stricken out.

The first three exceptions are to the rulings of the Court in permitting the appellee, Nellie C. Sauer, to testify as to the services she rendered to the defendant's testator, and as to the amounts she had received in compensation therefor. The statute, section 3 of Article 35 of the Code of 1912, provides that, "No party to the cause shall be allowed to testify as to *any transaction had with* or statement made by the testator," etc. This testimony was not admissible under this statute. The witness, a party to the suit, was testifying as to the transaction with the defendant's testator upon which she had brought her action, and the Court below, in permitting her to give such testimony, in our opinion, committed a prejudicial error.

It is contended by the appellee that even though this testimony given by the witness in response to questions, to which objections were made and exceptions noted, was inadmissible, nevertheless, the defendant was not damaged by the admission of this testimony because like testimony was permitted to be given by her without objection. As was said in the case of *P., B. & W. R. R. Co.* v. *Greene,* 110 Md. 45: "This class of testimony does not fall within the principle so often announced that the Court will not reverse the judgment where competent evidence favorable to the plaintiff's cause has been first excluded, and afterwards admitted, because in such cases it is apparent that no injury has been done."

In this case the defendant objected to the admission of this testimony and his objections were overruled and the injurious testimony admitted, to which rulings he excepted. It was not necessary that he should continue to object to like testimony in order to avail himself of the exception so taken by him, but he had a right to stand upon his exception to the admission of such prejudicial testimony.

The fourth exception, the exact meaning of which is difficult to ascertain, but so far as we are able to understand it, is upon the Court's ruling in admitting the conversation

between the husband of the plaintiff with the defendant, Dr. Giering, in the presence of the plaintiff after the death of Joseph X. Giering. In this conversation the plaintiff and her husband were told by Dr. Giering that his father in his will had left to her the household furniture, at which, as the witness expressed it, he was dumbfounded, and he told the doctor that his father "had promised a thousand dollars, that is the reason there was no claim, or anything made." Both he and the doctor became excited, and witness said, "Well, if we can't get it in a peaceful way we will let the Court decide it," and he was told by the doctor, "Well, go ahead and sue." The counsel for the appellee (plaintiff below) in his brief, in discussing this exception, says: "It is impossible to see how this answer would in any way throw any light upon the issue in the case." In this we agree with him, and if for no other reason, being immaterial, it was improperly admitted.

The fifth exception is to the ruling of the Court in refusing to permit the husband of the plaintiff, upon cross-examination, to answer whether or not he, on behalf of his wife and himself, "had a conversation with D. Giering relative to Mr. Giering, who subsequently died, as to any bills or anything else." We discover no serious objection to this question, unless, as claimed by the appellee, it is too general in its inquiry as to the subject matter of such conversation. The witness was not asked to give the conversation, but whether he had a conversation with the defendant. The question was asked leading up to the further inquiry as to its contents. It depended upon what was said in the conversation whether it was admissible, and when asked if he had a conversation with the defendant, the question should have disclosed in a general way the subject matter of the conversation about which the inquiry was made.

We think the Court erred in its ruling upon the sixth exception. The witness Sarah B. Owens was asked "Did he (the decedent) have a cow of his own that he got milk

from"? The defense in this case is that the plaintiff did not furnish the decedent with board, but that he provided his own food, consisting, in part, of milk. It it be shown that he had a cow from which he was supplied with milk, such evidence would be admissible under that defense. Moreover, it would likewise be admissible tending to show that although boarded by the appellee, he, in part, supplied the food consumed by him, and if shown to have been furnished by him without cost to the appellee, it was proper to be considered in arriving at the amount to be allowed the appellee for his board.

The seventh and eighth exceptions were to the rulings of the Court in permitting Sarah D. Owens to testify as to the value of the board furnished by the appellee to the decedent; and the ninth, tenth and eleventh exceptions were to the Court's rulings in permitting the witness Norwood to testify not only as to the value of the board, but likewise as to the value of the nursing said to have been rendered by the appellee to the defendant's testator.

Both of these witnesses were called and examined as experts. Mrs. Owens was asked: "Having heard the testimony of Mr. and Mrs. Sauer in reference to the board bill of $480, from November, 1907, to April 1, 1911, what in your opinion would be a fair price for that board?" which she was permitted to answer, under objection, stating that she thought it was a fair price for said board. The record disclosed that about a year prior to 1910, while employed in Richmond by the Old Virginia Antique Furniture Store, she aided her sister in the management of a small hotel in that city, by looking after the financial part only. When she returned to Baltimore she boarded with her sister and paid her five dollars a week, although there was really no "definite price". Her daughter boarded there, but she did not think her daughter paid anything. She had never kept a boarding house in Baltimore. When asked: "Are you or not familiar with boarding rates in the City of Baltimore;

have you boarded in the City of Baltimore"? she replied: "I never boarded only with my sister." She did not know the charges for board in Baltimore, although she had been told they were about like they were in Virginia.

The witness Norwood testified that he was at that time boarding on Eutaw Avenue; that he boarded there with his invalid wife to the time of her death, in February, 1910; that during his married life he frequently employed a nurse for his wife. He was then asked: "What do you think is a fair price for the board of Mr. Giering?" The defendant objected to the question, but the Court overruled the objection and the witness asked "May I answer it by telling my own experience?" He was then asked: "From your experience as a boarder, boarding alone and with your wife, what do you think would be a fair price for the board of Mr. Giering in his lifetime?" This question was also objected to, but he was permitted to answer, giving the price in his judgment. He was then asked: "From your experience in employing a nurse in that neighborhood out there, and you have heard the testimony in Court, what do you think would be a fair price for the services rendered by Mrs. Sauer to Mr. Giering"? This question, too, was objected to, but the objection was overruled and the witness was permitted to answer, stating, as he thought, a fair price therefor.

The testimony of these witnesses objected to should not have been admitted. Neither of them, in our opinion, was qualified to testify as an expert, and it is clear that the questions propounded to Norwood were improper ones even though he had been competent to testify as an expert.

The record contains three prayers that were offered by the plaintiff, all of which were granted, and five prayers offered by the defendant, which are designated as the first, second, third, fifth and sixth prayers; these were all refused. The rulings of the Court in granting the plaintiff's prayers and refusing the defendant's prayers form the the twelfth bill of exceptions.

The first three prayers of the defendant ask that the case be taken from the consideration of the jury. These we think were properly refused from the evidence offered in the case. There is testimony in the record, offered by the plaintiff, showing that the plaintiff, who was not a member of his family or in anywise related to him by blood or affinity, furnished to him board and rendered to him certain services that were accepted by him, for which, it is stated by one or more of her witnesses, he was to pay to her a stipulated sum. This evidence, tending to show an agreement or contract between the appellee and the defendant's testator, we think should have been submitted to the jury for its consideration.

Under the evidence in the case the fifth prayer should likewise have been refused.

By the defendant's sixth prayer the Court was asked to instruct the jury "That if they believe from the evidence that the plaintiff furnished board or rendered services to the defendant's testator, for which she has not been compensated, and that she expected to be compensated therefor by devise or bequest by the last will and testament of the defendant's testator and not otherwise, then the plaintiff can not recover for the board and nursing in this case."

In support of this prayer our attention is called to the case of *Bantz* v. *Bantz,* 52 Md. 686. In that case the son was attempting to recover from his mother's estate for services rendered to her in her life time, and this Court in discussing his claim, said: "The services must have been of such character, and rendered under such circumstances, as to fairly imply an understanding of payment, and a promise to pay. There must have been an expressed or implied understanding between the parties that a charge for the services was to be made, and to be met by payment. This Court has said in *Lee* v. *Lee & Welch,* 6 G. & J. 316, that it is familiar law, that if services are rendered with the exception of compensation by will, a charge can not afterwards be preferred against the person for them."

Upon an examination of the case of *Lee* v. *Lee & Welch,*
*supra,* it will be found that the son was attempting to re-
cover for services rendered to his father in his life time.
The father had never by word or deed promised or held
forth an expectation to his son that he would compensate him
for his services, nor did the son ever intimate to the father
or anybody else that he intended to claim such compensation,
but declared that he made no contract with his father, but
looked to his father's will as the source whence this com-
pensation was to flow. The Court in speaking of that case
said: "It is a case, which to the letter comes within the
familiar principles stated by Ld. KENYON, 1 Esp. Rep. 189,
*LeSage* v. *Coussmaker and Others, Executors,* that if the
services were rendered by the plaintiff 'without any view to
reward, but with a view to a legacy, that he could not set
up any demand against the testator's estate.' The author-
ities referred to by the appellants (*Jacobson* v. *Le Grange,*
3 Johns. Rep., 199; 2 Comyn on Contracts; *LeSage* v. *Couss-*
*maker,* 1 Esp. Rep. 189; 4 Dallas, 111, 130; *Roberts* v. *Swift,*
1 Yeates' Rep. 209; *Patterson* v. *Patterson,* 13 Johns. Rep.
380; *Snyder* v. *Castors,* 4 Yeates, 354) do not impugn the
principle upon which the order of the Orphans' Court rests
for its support. They were cases where there either was an
express promise of reward, or facts from which the promise
might be implied. Here no such facts are to be found; and
the case therefore comes completely within the well estab-
lished principle of law, that no action will lie to recover com-
pensation for services performed, where with a view to a vol-
untary legacy the services were rendered by the plaintiff
without any expectation of being paid the value thereof, or
any promise of remuneration, express or implied."

The case before us falls within the class of cases distin-
guished, in the opinion, from which we have just quoted,
from those cases to which the familiar principle stated by
LORD KENYON applies.

The rule stated in *Bantz* v. *Bantz, supra,* that the services
must have been rendered with a design, at the time of the

rendition, to charge and an expectation on the part of the recipient to pay for the services, and must have been of such a character and rendered under such circumstances as to fairly imply an understanding of payment and a promise to pay, in order to justify the allowance of the claim against the decedent; applies, as this Court said in *Bixler* v. *Sellman,* 77 Md. 496, "only when a claim of this character is made by a *member of the family of the decedent,* for of course it must be conceded that generally the law implies a promise to pay for services rendered and accepted."

When the services are rendered by a member of the family of the decedent, the presumption of law arises that such services are gratuitous, but with others such legal presumption does not exist. "As between persons not members of the same family, the mere fact of rendering services useful to the defendant would furnish *prima facie* evidence of their acceptance, and in the absence of some proof to the contrary, would raise an obligation to pay him what they were worth, there being no proof of special value." *Spencer* v. *Trafford,* 42 Md. 20; *Wallace* v. *Schaub,* 81 Md. 599.

In this case the record does not disclose any relationship either by blood or affinity between the appellee and the decedent. It is true they had lived in the same house for a number of years, yet she was not a member of his family, in the sense in which the term is used in these decisions, and there was no legal presumption arising against her that the services she rendered to him, if any, were gratuitous, but in the absence of some proof to the contrary, there was at least an implied obligation upon him to pay her what such services were worth.

It is said in 40 *Cyc.* 2814, "There is an implied obligation on the part of one who has received board and nursing from another to pay therefor, when such other is in no wise related to him." And in the same volume, page 2813, it is said: "Where one renders service to another in the hope or expectation of a legacy, devise or other provision by his will for his benefit, without any contract express or implied, but

relying solely upon the generosity of a person for whom such services were rendered, he cannot recover for such services because of the failure of such person to make such testamentary provision in his behalf." But if "services were performed in expectation of a beneficial provision by will, that will not prevent his recovery if there was an express agreement to pay therefor, or circumstances from which one could be implied by law."

In this case a number of witnesses were produced by the appellee who testified as to the board furnished and the services rendered, which were accepted by the decedent. This at least created an obligation upon him to pay for such services, but in addition to this, there is further testimony that he expressly agreed to pay her therefor. This case is not within the class of cases to which the principle of law found in the sixth prayer applies.

The first prayer of the plaintiff does not properly state the law of this case inasmuch as the jury is instructed that should they find certain facts therein mentioned that it "shall find for the plaintiff * * * what said meals and services were reasonably worth," without regard to their finding upon the alleged contract or agreement to pay a stipulated sum therefor. There is a want of evidence in both first and second prayers as to the value of said meals and services, but no special objection was made thereto in the Court below.

The last exception is to the action of the Court in failing or refusing to inform the jury that certain testimony commented upon by the counsel for the plaintiff in making his argument to the jury, had been stricken out. This arose from the impression of the Court that the testimony was still in the record, as he stated, when in fact the record disclosed it had been stricken out. From what we have said the judgment will be reversed.

*Judgment reversed and new trial awarded, with costs to the appellant.*