## THE PROVIDENT TRUST COMPANY, Ancillary Executor, *vs.* E. THOMAS MASSEY.

*Action for Services—Family Relationship—Instructions—Assumption of Fact—Non-Payment—Evidence.*

In an action for services rendered by plaintiff in managing a farm belonging to defendant's decedent, a witness who had managed numerous farms in that and an adjoining county, had been on decedent's farm, and knew its general location and the conditions in that locality, who was at the time managing four farms in that county, within from four to seven miles of decedent's farm, the management of which farms involved the same general conditions as to transportation, telephone, and other facilities as were involved in the management of decedent's farm, *held* qualified to testify as to what plaintiff's services were reasonably worth.                                    p. 40

The legal effect of prayers constituting a demurrer to plaintiff's evidence is to admit the truth of such evidence, and every inference properly deducible therefrom, but to deny their legal sufficiency under the pleading to entitle plaintiff to recover.

p. 41

That plaintiff was decedent's uncle did not render them members of the same family, so as to raise a presumption that services rendered by plaintiff to decedent were gratuitous, they living, during the rendition of the services, in different states.

p. 41

As between persons not members of the same family, the rendition of useful services by one to the other furnishes *prima facie* evidence of their acceptance and, in the absence of some proof to the contrary, creates an obligation on the part of the recipient to pay an amount equal to the reasonable value of the services.                                    p. 41

If the parties are members of the same family, the law presumes that at the time the services were rendered there was no intention to charge and pay for them, and requires clear and satisfactory proof from disinterested sources to overcome

this presumption; but if the parties are not members of the same family, there is no such presumption but, on the contrary, there is an implied obligation on the part of the one who receives and is benefited by the services, to pay their reasonable worth.                                                    p. 43

An allegation in the declaration, in an action for compensation for services rendered to defendant's decedent, that such compensation was payable to plaintiff in decedent's lifetime, is equivalent to an allegation that it has not been paid.       p. 45

In an action for compensation for services rendered, an allegation of non-payment of such compensation is a necessary part of the declaration, and its omission makes the declaration demurrable.                                                   p. 45

Payment may be proved under the general issue plea.   p. 45

In an action for the value of services rendered, the general issue plea puts in issue all the averments of the declaration.

p. 45

When non-payment is alleged in the declaration, as is necessary, and this is denied by the filing of the general issue plea, it is incumbent on plaintiff to offer evidence tending to prove non-payment.                                              p. 45

A prayer cannot assume any fact when the onus of proving such fact rests upon the party asking the instruction, no matter how clear his proof on the subject may be.              p. 45

In an action for the value of services rendered defendant's decedent, prayers granted at plaintiff's request *held* defective as instructing the jury that they must find for plaintiff if they find the facts therein detailed, but totally ignoring the issue of non-payment, or assuming the fact of non-payment, and so leading the jury to believe that to render a verdict for plaintiff it was necessary only to find affirmatively the facts set out in the prayers.                                             pp. 45, 46

In an action for services rendered defendant's decedent in managing the latter's farm over a period of eleven years, evidence that during that period plaintiff had in his possession large sums of money belonging to decedent, that from time to time he rendered to decedent statements of account in respect to receipts and disbursements in connection with the farm, that shortly before decedent's death, and after the sale by her of

the farm, he submitted a statement showing a balance due her, and enclosed a check for the amount of such balance, and, so far as appeared, he made no demand for payment during her lifetime, *held* to create a presumption of payment.    pp. 46, 47

*Decided July 1st, 1924.*

Appeal from the Circuit Court for Cecil County (WICKES and KEATING, JJ.).

Action by E. Thomas Massey against the Provident Trust Company of Philadelphia, ancillary administrator in Maryland of the estate of Ella M. Copperfield, deceased. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Redmond C. Stewart,* with whom were *S. Scott Beck, Henry L. Constable, William L. Henderson,* and *Stewart & Pearre* on the brief, for the appellant.

*Hope H. Barroll, Joshua Clayton* and *L. Wethered Barroll,* submitting on brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered by the Circuit Court of Cecil County, in favor of the appellee in the sum of twenty-seven hundred and fifty dollars, the suit having been removed to that court from the Circuit Court of Kent County. The appellant is The Provident Trust Company of Philadelphia, executor in Maryland of the will of Ella M. Copperfield, and the appellee is E. Thomas Massey. The suit was brought by the appellee to recover for services rendered Ella M. Copperfield during her lifetime, said services being the supervising of her farm in Cecil County, Maryland, for eleven years from 1909 to 1919, inclusive.

Ella M. Copperfield, before her marriage, was Ella Massey, the daughter and only surviving child of George Olam

Massey. She inherited from her father, who died in 1909, a farm containing about six hundred acres, located in Cecil County, Maryland. She was twenty-four years old at the time of her father's death, and about nine months thereafter married Earl M. Copperfield, and lived with him in the City of Philadelphia up to the time of his death, which occurred in August, 1920. She did not long survive her husband, her death taking place in December of the same year. The appellee, E. Thomas Massey, is an uncle of Ella M. Copperfield, being her father's brother, and lives in Kent County, being cashier of The Peoples' National Bank of Chestertown, and engaged in the insurance, seed and fertilizer business. He also supervised and managed farms belonging to different members of the Massey family, that of his sister, Mary Massey, his own, and his mother's. Shortly after the death of his brother, George Olam Massey, he took over the management of the farm belonging then to Ella Massey, afterwards Ella M. Copperfield. It is services rendered in this connection for which compensation is claimed.

In August, 1911, Ella M. Copperfield executed a power of attorney to the appellee, in which power was given him to manage her property and collect rents and profits arising therefrom, and under which power of attorney the appellee continued the care of Mrs. Copperfield's farm, supervised and generally managed it, the management and supervision consisting of leasing or renting the farm to tenants on shares, disposing of the landlord's share of the produce, collecting the proceeds therefrom, and doing generally those things which an owner of farm property would do. This relationship continued to exist until Mrs. Copperfield sold the farm to Mr. Steele in the year 1920, the purchaser getting the grain crop sown in 1919. In connection with the management of the farm the appellee supervised the construction of a barn or stable thereon, costing about twenty-eight hundred dollars, to replace one which had burned.

The declaration contains the money counts, and accompanying it is the cause of action, consisting of an account for services rendered in the supervision and management of the

said farm in each of the years beginning with 1909 and ending with 1919, the said account setting out generally in each year the character of the services and the amount due therefor. The aggregate amount, according to said account, being thirty hundred and thirty dollars, and being sworn to by the appellee.

The defendant pleaded the general issue plea, and afterwards filed pleas of limitation. These pleas of limitation, upon motion of the plaintiff, after argument were rejected by the court. Issue was then joined on the defendant's general issue pleas and the case tried by a jury on September 26th, 1923.

During the progress of the trial the appellant reserved six exceptions to the rulings of the court on the testimony, three of which were abandoned during the argument in this court, and only the fourth, fifth and sixth urged by the appellant.

At the close of the plaintiff's testimony the defendant offered a prayer to take the case from the jury, which was refused by the court. The defendant offered no testimony. The plaintiff then offered five prayers, the first, third and fifth of which were granted and the other two rejected. The defendant offered four prayers, the second and third of which were granted, and the other two rejected. The defendant filed special exceptions to the granting of the plaintiff's first and fifth prayers, which were overruled by the court.

The ruling of the court in granting the plaintiff's first, third and fifth prayers, and overruling the defendant's special exceptions to the plaintiff's first and fifth prayers, and refusing the defendant's first and fourth prayers, constitutes the seventh bill of exception.

We will first examine and pass upon the exceptions taken to the rulings of the court on the evidence.

The fourth and fifth exceptions will be considered together; they grow out of the refusal to sustain objections by the defendant to questions asked the witness Perkins.

Mr. Perkins had previously testified that he lived in Chestertown; that his business is being executor and administrator

of estates, selling securities and bonds; that at the time of
testifying he was winding up the affairs of the Second Na-
tional Bank; that he also had been managing farms for about
ten or twelve years; that by managing farms he meant taking
the place of the owner and giving the farm generally such
supervision as would be given by the owner; that during the
ten or twelve years he had been managing farms that the
greatest number managed in any one year was sixteen and the
lowest ten; that these farms managed by him during that
period of time were located in Kent and Cecil Counties; that
he knew the Copperfield farm and had been on it once; that
he knew the general location of the farm and the conditions
in that locality; that he was familiar with what was required
of a person occupying the plaintiff's position in respect to
the management of farms; that at the time of testifying the
witness was managing four farms in Cecil County, and that
the same general condition as to roads, water transportation,
telephone and other facilities as to the management of a
farm existed in the locality of the Copperfield farm, as ex-
isted in the neighborhood where the farms that he was then
managing were located; that the distance from the Copper-
field farm to those the witness was managing ranged from
four to nine miles. The witness was then asked: "Q. Mr.
Perkins, have you heard all the testimony in this case? A.
Yes, sir. Q. Are you able to state from what you heard,
from all the testimony and from your experience in handling
real estate, what the services from Mr. Massey were reason-
ably worth annually?" To the latter question, upon objection
by the defendant being overruled, the defendant excepted,
constituting the fourth bill of exception. The witness then
answered, "Yes, sir." "Q. Please state what in your judg-
ment the services of Mr. Massey were reasonably worth in
the period described in the testimony annually?" To which
question the defendant also objected, and upon the court
overruling the objection, the defendant excepted, and this
constitutes the fifth bill of exception.

The basis of objection to these two questions is that the
witness Perkins was not qualified to testify.

We do not think the lower court erred in permitting these questions and answers, under the authority of the decisions of this Court in the cases of *Wallace* v. *Schaub*, 81 Md. 594; *Doyle* v. *Gibson*, 119 Md. 36; and *State* v. *Phillinger*, 142 Md. 365.

The witness here was a man of large business, and with special experience in the supervision and management of farm property, not only in Kent County where he lived, but also in Cecil County within a few miles of the Copperfield farm. This experience extended over a period of ten or twelve years, during which period he managed from ten to sixteen farms annually. He knew the farm in question and the general conditions surrounding the management of like property in that locality. He was fully acquainted with the service required of a man occupying the position of the plaintiff in this case, and in addition thereto had heard during the progress of the trial numerous witnesses detail the service rendered by Mr. Massey. We think under this condition that the witness was qualified to express an opinion as to the reasonable worth of the service rendered by the plaintiff. The cases of *Carlin* v. *Biddison*, 135 Md. 458; *Giering* v. *Sauer*, 120 Md. 295; *Western Md. Rwy. Co.* v. *Jacques*, 129 Md. 400; and *Dashiell* v. *Jacoby*, 142 Md. 330, are not in conflict with this view.

It follows from what we have said in reference to the fourth and fifth exceptions that the court below committed no error in refusing to strike out the whole of the witness Perkins' testimony, which was the basis of the sixth exception.

The rejected prayers of the defendant were as follows:

*Defendant's First Prayer.*—"The jury are instructed that there is no evidence in the case legally sufficient to entitle the plaintiff to recover and the verdict of the jury must be for the defendant.

*Defendant's Fourth Prayer.*—The jury are instructed that there is no evidence in the case legally sufficient under the pleadings to establish a contract express or implied between

the plaintiff and the said Ella M. Copperfield, and their verdict must be for the defendant."

These prayers constitute a demurrer to the plaintiff's evidence. As repeatedly stated by this court, the legal effect of such prayers is to admit the truth of the plaintiff's evidence, and every inference properly deducible therefrom, but to deny their legal sufficiency under the pleading to entitle the plaintiff to recover.

These prayers were properly rejected.

E. Thomas Massey was an uncle, a blood relative, of the decedent, but they were not *members of the same family;* and there arises no presumption that the services were gratuitous. The appellee lived in Chestertown, Maryland, while Ella M. Copperfield lived with her husband, in the City of Philadelphia, from 1909 to 1920, the time of his death. This was the whole period during which the services were rendered and for which compensation is claimed.

Their domestic associations did not involve the usual incidents of *family* relationship. *Neudecker* v. *Leister,* 132 Md. 574; *Elosser* v. *Fletcher,* 126 Md. 244; *Giering* v. *Sauer,* 120 Md. 302; *Pearre* v. *Smith,* 110 Md. 534; *Wallace* v. *Schaub, supra.*

As between persons not members of the same family the rendition of useful services by one to the other furnishes *prima facie* evidence of their acceptance and, in the absence of some proof to the contrary, will create an obligation on the part of the recipient to pay an amount equal to the reasonable value of such services. *Spencer* v. *Trafford,* 42 Md. 20; *Bixler* v. *Sellman,* 77 Md. 494; *Wallace* v. *Schaub, supra; Giering* v. *Sauer, supra.*

There is abundant evidence, as disclosed by the record, tending to prove the employment of the plaintiff by the defendant's decedent, and the rendition of the services.

This is shown by the power of attorney hereinbefore mentioned, which was signed and acknowledged by Ella M. Copperfield, and recorded among the Land Records of Cecil County, by the written lease of the decedent's farm for five years from January 1st, 1917, executed by the plaintiff; by

the statement of accounts, and letters of the plaintiff to Ella
M. Copperfield or her husband; and by the testimony of
numerous witnesses as to the plaintiff's management of the
decedent's farm, and the kind and quantity of the service.

There is also the evidence of Miss Mary Ella Massey,
sister of the plaintiff, and aunt of the decedent, who testi-
fied: "A great many times Mrs. Copperfield told me if it
was not for her Uncle Tom, without him, she could not man-
age her farm, and she would pay him for his services"; that
"she gave the farm to him to manage to get her out of debt,
and he had done the very best of his ability"; that "she was
not capable of taking care of her farm"; that "her husband
knew nothing about farming, and if it were not for Uncle
Tom she wouldn't be able to have kept it"; that "he had
accomplished a great deal, and had paid off a great many of
her debts."

In the case of *Bantz v. Bantz,* 52 Md. 694, Judge Irving
said: "This claim is unquestionably suspicious on its face.
It is for nineteen years' service. It is the account of a man
who had large dealings with the alleged debtor, and through
whose hands large sums of the alleged debtor's money were
continually passing, from which, in settlements, he could
have retained his pay. It is in proof that a settlement was
had a short time prior to her death, and no mention of any
such claim appears to have been made."

In Bagby's Maryland Law of Executors and Administra-
tors, at page 113, it is said: "When through a series of years
the claimant's conduct was irreconcilable with his claim, it
may not be allowed without clear and satisfactory proof from
disinterested sources." The author cites a number of this
Court's decisions to support the statement of the text, among
which are *Bantz v. Bantz, supra; Duckworth v. Duckworth,*
98 Md. 98; *Bixler v. Sellman,* 77 Md. 497; *Lowe v. Lowe,*
111 Md. 118; *Elosser v. Fletcher,* 126 Md. 249; *Huff v.
Simmers,* 114 Md. 553; *Pearre v. Smith,* 110 Md. 531;
*Stockett v. Jones,* 10 G. & J. 278. There are many points
of similarity between some of the cases above cited and the

case now being considered, but in each of those cases the claimant was a *member of the decedent's family*, and that fact constitutes the vital distinction.

If the parties are members of the same family, the law presumes that at the time the services were rendered there was no intention to charge and pay for them, and requires clear and satisfactory proof from disinterested sources to overcome this presumption. If the parties were not members of the same family there is no such presumption, but, on the contrary, there is an implied obligation on the part of the one who receives and is benefitted by the services to pay their reasonable worth.

This brings us to a consideration of the action of the court below in overruling the defendant's special exceptions to the plaintiff's first and fifth prayers, and in granting same. These prayers are as follows:

"*Plaintiff's First Prayer.*—The court instructs the jury that if they find that the plaintiff rendered to the late Ella Copperfield valuable personal services, and that said services were of such a nature and rendered under such circumstances, that the jury find there was an express or implied understanding or agreement between the plaintiff and the said Ella Copperfield, that the latter would pay therefor and the plaintiff expected to be compensated therefor, and that some portion of said services under the conditions mentioned were rendered the verdict of the jury must be for the plaintiff."

"*Plaintiff's Fifth Prayer.*—If the jury find from the evidence that the plaintiff and the late Ella Copperfield had an agreement under which the plaintiff was to manage and control the farm in Cecil County of the said Ella Copperfield, and that the plaintiff under said agreement did manage the farm of the said Ella Copperfield from 1909 to 1919, inclusive, or for any part of said period, and that said agreement between the plaintiff and the said Ella Copperfield was that the services of the plaintiff should be paid for, then the verdict of the jury must be for the plaintiff in this case."

To which prayers the defendant filed the following special exceptions:

"Defendant's Special Exception to Plaintiff's First Prayer.

"The defendant specially excepts to the granting of the plaintiff's 1st prayer and for reasons thereof says:

"1.    That there is no evidence in the case legally sufficient under the pleadings,

"(a) to support the hypothesis of said prayer;

"(b) that there was an express or implicit understanding or agreement between the plaintiff and the said Ella Copperfield that the latter would pay therefor and the plaintiff expected to be compensated therefor."

"Defendant's Special Exception to Plaintiff's Fifth Prayer.

"The defendant specially excepts to the granting of the plaintiff's fifth prayer, and for reasons thereof says:

"1.    That there is no evidence in the case legally sufficient under the pleadings,

"(a) to support the hypothesis of said prayer;

"(b) that there is no evidence of an agreement between the plaintiff and the said Ella Copperfield that the services of the plaintiff should be paid for;

"(c) that there is no evidence that the plaintiff was not paid for all services rendered to the said Ella Copperfield."

The appellant contends these prayers are faulty, because they fail to submit to the jury the finding of a fact which is essential to the plaintiff's right of recovery, to wit:    That the plaintiff had not been fully paid for all services rendered Ella M. Copperfield; or stated in another way, that these prayers assume the fact that the plaintiff had not been paid for all services rendered Ella M. Copperfield.

The appellant further contends that there is no evidence that the plaintiff was not fully paid.

One of the essential elements of the plaintiff's case is non-payment. The declaration alleges that money was payable by the defendant's testatrix in her lifetime to the plaintiff, and is equivalent to saying that it has not been paid, for if it has been paid it is not payable.

This allegation is a necessary part of the declaration, and when omitted makes it demurrable. *Merryman* v. *Rider,* 34 Md. 98; *Tyng* v. *Woodward,* 121 Md. 422.

Payment may be proved under the general issue plea. 1 Poe, Pl. & Pr., secs. 607-608; *Seff* v. *Brotman,* 108 Md. 278; *Huff* v. *Simmers,* 114 Md. 555.

The defendant's general issue plea put in issue all of the averments of the *narr. Herrick* v. *Swomley,* 56 Md. 439.

It is clear that non-payment being a necessary allegation, and having been so alleged in the declaration in this case, and having been denied by the defendant, by filing the general issue plea, it is incumbent upon the plaintiff to offer evidence tending to prove non-payment. *Gill* v. *Donovan,* 96 Md. 518.

In that case, which was a suit by the appellee to recover for services rendered the appellant's intestate during her lifetime, in passing upon an exception to the evidence of a witness to the effect that the witness had heard the intestate say, about three weeks before she died, she had not given the appellee anything for his services, the court, through Judge Jones, said: "The admissions testified to by this last-named witness went to the appellee's whole case; all of them to the merits and some of them to the appellee's replication to the plea of the statute. It was a part of the appellee's case to show she had received no payment for her services, and that this had been admitted by Mrs. Staylor within time before suit brought to sustain her replication of new promise. The evidence in question was, therefore, directly in support of the issues on trial."

A prayer cannot assume any fact when the onus of proving such facts rests upon the party asking the instruction, no matter how clear his proof on the subject may be. *Turner*

v. *Ellicott,* 9 Md. 52; *Balto. & S. R. R. Co.* v. *Woodruff,* 4 Md. 242; *Balto. & O. R. Co.* v. *Hendricks,* 104 Md. 76; *Coastwise Shipbldg Co.* v. *Tolson,* 132 Md. 203.

In the *Hendricks case, supra,* Judge McSherry said: "Now, a prayer is defective in its structure if it either expressly or inferentially assumes as proved a fact which should be submitted to the jury for them to find, especially when the burden of proving that fact is upon the party presenting the prayer."

And in *Md. & Del. R. R. Co.* v. *Porter,* 19 Md. 468, this Court held: "The exclusion from a prayer of a fact necessary and material to support the instruction sought, constitutes an objection not less fatal than would be the assumption of the same fact, for in either case the tendency is to force a verdict on facts, the finding of which is taken from the jury."

In the case now under consideration the plaintiff's first and fifth prayers instruct the jury they must find for the plaintiff, if they find the facts therein detailed, but either totally ignore the issue of non-payment or assume the fact of non-payment.

The effect of granting these prayers was to mislead the jury by allowing them to disregard the issue of non-payment, and to believe that they were only required to find affirmatively from the evidence the facts set out in the prayers, in order to render a verdict for the plaintiff.

The evidence shows that the claim of the plaintiff was for services extending over a period of eleven years, that during that period he had in his possession large sums of money belonging to the decedent; that from time to time the plaintiff rendered to the decedent statements of account in respect to receipts and disbursements in connection with the management of her farm, and that on September 27th, 1920, shortly before her death, and after the sale of the farm to Steele, the plaintiff rendered such an account showing the item "Sept. 25 To check to balance account $323.44," with which he sent a letter stating: "I am enclosing my ck. of

$323.44 and statement which balance my books to date." The evidence fails to disclose any demand by the plaintiff upon the decedent for payment during her lifetime. This evidence all tends to create the presumption of payment, and the plaintiff's first and fifth prayers should have been so framed as to submit the issue of non-payment to the jury.

It follows that it was error not to have done so, and the judgment must be reversed.

*Judgment reversed and new trial awarded, with costs to the appellant.*