ZAHN *v.* HEIL, EXECUTOR

[No. 117, October Term, 1948.]

*Decided March 11, 1949.*

578

Submitted on briefs before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Leo H. Miller, Holden S. Felton* and *Paul C. Zahn* on the brief for the appellant.

*Edward Oswald, Jr.,* and *George N. Oswald* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is the second appeal in a suit against an executor for services rendered the decedent. On the first appeal a judgment for defendants was reversed on rulings on evidence. *Heil v. Zahn,* 187 Md. 603, 51 A. 2d 174. This is an appeal from a judgment for plaintiff at the second trial.

From January 2, 1939 to June 24, 1945 plaintiff was employed by decedent, as housekeeper or practical nurse or both, lived with him and his father at his house in Hagerstown, and received from him her board and $3 per week. When she went there the father was 85. The house is a double house; the Hammonds lived in one half and rented the other half. The father owned a one-fifth interest in it and a life estate, with remainder to decedent, in the other four-fifths. On June 24, 1945 the father died; a few hours later decedent committed suicide. The father died intestate, the son left a will, dated February 3, 1943, by which, *inter alia,* he left plaintiff $2,000. Plaintiff contends she was employed as a practical nurse; defendant contends, as housekeeper. She was housekeeper, but she also did nursing to an increasing extent as the father and decedent became more advanced in

years, the father more helpless, and decedent deteriorated physically and mentally. As she was not a member of the family, there is no presumption that her services were rendered gratuitously; as she was paid $3 per week, there is no presumption that she was to receive more, even if her services were reasonably worth more. Defendant contends that she worked for $3 per week with the expectation (which was realized) of a legacy. Plaintiff contends that decedent had promised to pay more than the $3 per week after his father died and the property was sold.

At the first trial plaintiff testified (when called by defendant), "I was promised more when he was able to pay it." 187 Md. at page 606, 51 A. 2d at page 176. At that trial Rev. Dr. Wagner, pastor of the father's church, (called by defendant) testified that plaintiff told him she was working for decedent for a very small consideration, but "had been promised additional compensation *in the will.*" [Italics supplied]. 187 Md. at page 607, 51 A. 2d at page 177.

At the second trial plaintiff was not called by defendant; Dr. Wagner (again called by defendant) testified that plaintiff had said "she was working for a very meagre wage but had the doctor's assurance that she would be compensated after his father's death. * * * Nothing more was said except that Dr. Hammond had promised to compensate her properly after his father's death. I can't recall the words she used, but that was the idea that she left with me." As to what way she was promised, "Only that she would be taken care of for what she was not receiving by way of appropriate wages would be made up after his father's death [sic]". He does not remember any conversation with plaintiff with reference to being left money in a will. Benjamin F. Kisner, who did not testify at the first trial, called by plaintiff at the second trial, testified that he is 70 years old and had worked for decedent over a period of years, cut their grass and done other odd jobs around the house, that decedent the fall or winter before he died wanted witness

to come up and work steadily in the Hammond home, to assist plaintiff. "Q. Did you ever have a conversation with the doctor about Stella Heil? A. Only he asked me to come up and assist him and said there was too much work for her to do. He said he couldn't pay me what I was worth, but he would pay me the same as he was going to pay her. "Q. Did he say how? A. He said he would pay me a few dollars a week, and after his father died and the property was sold he would pay me the rest—a decent wage—he didn't say how much." "That was sometime in March, 1947 [sic]."

Defendant contends that the trial court erred (1) in refusing to direct a verdict for defendant, (2) in refusing to charge the jury on the defense of limitations and (3) in two rulings on evidence.

On the first appeal defendant claimed that, notwithstanding error in rulings on evidence, we should conclude from the testimony before us that the case should have been taken from the jury and therefore the verdict for defendant was right and the judgment should be affirmed. We said, "However, we do not have the whole testimony either in the appendices or in the typewritten record and we cannot pass upon that question." 187 Md. at pages 609-610, 51 A. 2d at page 178.

We think the Kisner testimony, though meagre, is sufficient to take the case to the jury. However backhanded in form, it means (if it means anything) that decedent told Kisner he had promised plaintiff he would pay her a few dollars a week, and after his father died and the property was sold he would pay her "the rest—a decent wage". Cf Roycroft v. Nellis, 171 Md. 136, 140, 188 A. 20. The weight of this evidence is a question for the jury. In a case of this kind, where both contracting parties' lips are sealed, the one's by death, the other's by the Evidence Act, an atmosphere of unreality in the testimony is inevitable. It is unnecessary to consider Dr. Wagner's testimony. Not only the weight but the legal sufficiency of his testimony may be questionable.

Defendant objected to the charge to the jury for failure to charge that plaintiff cannot recover for services ren-

dered more than three years before suit brought unless the jury finds a new promise or acknowledgment within that period. As the only evidence that takes the case to the jury is evidence of a promise to pay after the father's death, that evidence precludes the instruction requested by defendant. *Marx v. Marx,* 127 Md. 373, 382, 96 A. 544.

Defendant objects to plaintiff's testimony that before and after her employment by decedent she had other employment as a practical nurse. At most this testimony tends to show competency (which has not been questioned) to perform services which she did perform for decedent. If this is superfluous or irrelevant (which we need not decide), it is not prejudicial.

Miss Harbaugh, registrar of nurses for the Washington County Hospital for thirteen years, is not a nurse but knows what the duties of a practical nurse are and what the wages of practical nurses were in Hagerstown from 1939 to 1945. She testified that, on the basis of the testimony (which she had heard) of two witnesses as to what plaintiff did, plaintiff performed the duties of a practical nurse. On defendant's motion her testimony that plaintiff had done more than a practical nurse should do, was stricken out. She also testified to wages of practical nurses. Defendant's objection to her testimony is untenable. In *Wallace v. Schaub,* 81 Md. 594, 597, 598, 32 A. 324, testimony of a trained nurse, who was acquainted with the value of services of nurses, trained and untrained, as to the value of services of plaintiff as an untrained nurse, was held admissible. *Cf. Doyle v. Gibson,* 119 Md. 36, 39, 85 A. 961; *Provident Trust Co. v. Massey,* 146 Md. 34, 38-40, 125 A. 821. The weight and application of Miss Harbaugh's testimony was for the jury. We find no substantial conflict as to what services plaintiff rendered, but the jury might draw more than one inference as to how much of her services were nursing and how much housekeeping and other domestic work.

*Judgment affirmed, with costs.*