## REECE, ADM'R *v.* REECE

[No. 285, September Term, 1964.]

650

*Decided August 3, 1965.*

The cause was argued before HAMMOND, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Horace P. Whitworth, Jr.,* for appellant.

*John F. Somerville, Jr.,* for appellee.

BARNES, J., delivered the opinion of the Court.

This is an appeal from a judgment entered by the Circuit Court for Garrett County in favor of S. Earl Reece, appellee (plaintiff below), in the amount of $34,200, for alleged personal

services performed during the period 1930-1949 for appellant's decedent, Ida M. Rhoads. We are asked to reverse the judgment on the ground that there was no legally sufficient evidence upon which the appellee could recover, and because the action is barred by the statute of limitations.

The parties to this appeal are brothers, and both live in Westernport, in Allegany County. Ida M. Rhoads, was their aunt and also a resident of Westernport until her death on December 30, 1959. Upon her death the appellant, Robert M. Reece, probated a Last Will and Testament dated March 22, 1956 in the Orphans' Court for Allegany County and qualified as administrator *cum testamento annexo* of her estate. On August 5, 1960, four days before the administrator's notice to creditors was to expire, the appellee, S. Earl Reece, filed a claim against the estate in the amount of $53,500, a claim which the administrator rejected in writing on October 10, 1960. Earl then filed suit on April 7, 1961 in the Circuit Court for Allegany County; the case was later removed to Washington County, and then removed again to Garrett, where it was heard by the court without a jury on January 17, 1964.

Plaintiff claimed in his declaration that he had rendered personal services of substantial value to the Woodland Lumber Company, a corporation of which both he and Miss Rhoads were officers, directors, and stockholders, from 1930 until its dissolution in 1952, and that he had given advice to Miss Rhoads individually in connection with her business and personal affairs from 1930 until the date of her death in 1959. His cause of action is based upon two written documents, not under seal, both of which are dated December 2, 1949. Both are set forth in the footnote below; both are rough in appearance, and the typing on each, very poor.[1]

---

1. On oral argument the appellant informs us that there are five such documents signed by Ida M. Rhoads and all dated December 2, 1949 and strenuously urges us to hold that a fraud has been practiced by the plaintiff upon appellant's decedent. However, argument is no substitute for proof; and in the absence of any evidence in the record before us which would tend to show overreaching or abuse of a confidential relationship by the plaintiff, we must conclude that such matters are not properly before us.

The first document reads as follows: "THIS agreement is a lien

The testimony before Judge Hamill was not lengthy and consisted of but three witnesses. The first witness, William H.

___

and legal claim on all of my personal and real property, after my death, for wages due. STATEMENT. THIS IS TO CERTIFY THAT S. EARL REECE performed services and duties at office of the company I own, the Woodland Lumber Company, whose address is Commercial Trust Building, Philadelphia, Pennsylvania, since the month of April, One Thousand Nine Hundred and Thirty (April 1930), and continuously to the present date, * * * and without salary. THAT * * * S. Earl Reece has also been a Member of the Board of Directors and an Officer of the said Woodland Lumber Company. THAT * * * wages shall be paid to him at rate of $150.00 each month from April 1930 to date hereon for services rendered to the company and me and $150.00 each month for future service to the company or me." (There follows the signature of Miss Rhoads and that of two witnesses, with an acknowledgement and notarial seal by one of them). The second document reads as follows: "AGREEMENT BETWEEN IDA M. RHOADS AND S. EARL REECE. DECEMBER 2, 1949. THIS IS TO CERTIFY THAT S. EARL REECE HAS RENDERED SERVICES for me at office of the company I own, the Woodland Lumber Co., of Philadelphia, Pa. continuously from and including April 1930 to Dec. 2, 1949. Services includes his position as Chairman of the Board of Directors and President of the Woodland Lumber Co. Also General Manager and Auditor. Services have been rendered to me and the company for my financial and personal benefit. S. Earl Reece has not received any payment or wages from the company or me for his services. FOR VALUE RECEIVED AND FOR SERVICES RENDERED, I IDA M. RHOADS, the undersigned, promise to pay to S. Earl Reece, his heirs or assigns, the sum of One Hundred Fifty Dollars ($150.00) a month from and including April 1930 and for each succeeding month of each year, in lawful money of the United States of America, due for services rendered to Dec. 2, 1949, payable without interest. I also promise to pay S. Earl Reece, $150.00 each month for future services rendered to the Woodland Lumber Company for me and for personal services to me. S. Earl Reece agrees to continue future services to the company for my benefit and future personal services to me. This accumulated sum payable, without interet [sic]. (Inserted between two lines is the following sentence): All money payable from my Estate. This is a Lien and Legal Claim on all my Bank Accounts, and all Personal and Real Property for wages due to S. Earl Reece. I also agree to reimburse S. Earl Reece for all expenses for travel, meals, lodging, etc., in connection with work for the Woodland Lumber Company or for any expenses he may incur and pay while performing personal services for me. These expenses to be paid

Jenkins, as the Chief Deputy Register of Wills for Allegany County, testified that the signature on the will dated March 22, 1956 was that of Ida M. Rhoads; that the docket entries for the Rhoads' estate show a claim filed by the plaintiff on August 5, 1960 in the amount of $53,500; and that his files contained a carbon copy of a letter from the defendant to the plaintiff rejecting the claim. Verified copies of the will, the docket entries, and the letter were introduced into evidence.

The second witness was Arthur P. Myers, a handwriting expert of approximately forty years' experience, whose qualifications were admitted. After familiarizing the court with the methods he employed (and with the circumstances under which he was retained as an expert in this case), he testified that the

---

each time they accrue or are incured [sic], or soon thereafter. In the Savings Bank of Baltimore some years ago, I, Ida M. Rhoads opened an account with my own money. Acct. No. 108-519 in the name of S. Earl Reece, Blanche L. Reece, Helena A. Murphy and Ophelia B. Murphy. Money has been added to this bank account by me at intervals. Money from this acct. No. 108-519 to be used to help pay wages due to S. Earl Reece. Loans to him canceled. Wages due. I, Ida M. Rhoads, grant and give to S. Earl Reece, the Power of Attorney to act for me as need arises. I also appoint him Executor of my Estate, without bond or salary but expenses allowed. In the event he cannot act as Executor, he may appoint another to act. See attached agreement for Power of Attorney and Executor of Estate. Page number one * * * see attached page. (The second page of the second document is as follows) : This agreement between Ida M. Rhoads and S. Earl Reece. POWER OF ATTORNEY. I, Ida M. Rhoads, do hereby grant to, give and empower E. Earl Reece with the Power of Attorney, to act for me, to perform all and any acts and deeds for me in the execution of legal documents, drawing of checks on my bank accounts and to perform other acts in my stead. EXECUTOR OF ESTATE. I, Ida M. Rhoads, do hereby appoint my nephew S. Earl Reece to be Executor of my Estate, without bond and without salary but to be allowed all of the necessary current expenses while performing the duties as Executor of my estate. S. Earl Reece shall have complete charge and full power to perform the duties connected with the disposition, distribution and full settlement of my entire Estate, * * * after my death * * * he shall be paid $150.00 a month from April 1930 to date and same for future work. (There follows the signature of Miss Rhoads and that of two witnesses, with an acknowledgement and notarial seal by one of them).

evidence was "irresistible, unanswerable and overwhelming," that the signatures of Ida M. Rhoads, on the two documents dated December 2, 1949 and on the probated will dated March 22, 1956, "were written by one and the same person and written by one and the same source and one and the same mind." The finding by the trial court that the signatures of Ida M. Rhoads to the documents dated December 2, 1949 were valid was fully sustained by this testimony.

The third witness was the plaintiff, S. Earl Reece. He testified that from 1930 until 1952 he was the "territorial manager for an outside business" located in Baltimore, Maryland, the nature of which was not made clear, from which he earned "approximately $4,500 to $5,000 a year." However, he testified that he also had an association with Woodland Lumber Company "from 1930 until it went out of business" in 1952. Plaintiff regularly attended corporation meetings, and, from time to time, served as a director, as chairman of the board of directors, president, general manager, and auditor. Certified letters from a Philadelphia bank establish that Mr. Reece was authorized to draw checks on the company's bank account. Certified copies of the articles of incorporation and of the minutes of various corporate meetings were introduced into evidence. The ownership of the company's stock was testified to be as follows:

| | |
|---|---|
| Mrs. Susanna Campbell | 25 shares |
| Jeremiah T. Robinhold | 25 shares |
| S. Earl Reece | 15 shares |
| Ida M. Rhoads | 685 shares |

These 750 shares outstanding at $100 per share equalled the total $75,000 capital authorized by the company's charter, as amended.

The plaintiff's testimony does not reveal the nature of the services which he claims to have performed either for the lumber company or for Ida M. Rhoads individually. He did testify that he received "not one cent" from the corporation during its entire existence, and that he had "no salary arrangement whatever" with it. In reply to a question "Why didn't you receive any money?", he stated "Well, the Woodland Lumber Com-

pany, as it states right in those minutes, salaries were to be continued to Mr. Robinhold and Ida M. Rhoads only and I agreed I would be paid later on with a contract my aunt and myself had made." He also testified that he did not "intend to work all these years for nothing," and that the work he did would be valued at more than $150.00 a month "for the responsibility." As indicated later, this evidence was subsequently stricken out by the trial court upon the motion of the defendant. The plaintiff, Reece, was not allowed by the trial court to testify whether he had any arrangement with anyone else in respect to remuneration for services rendered the company, nor what responsibilities would justify a salary of $150 a month, nor whether, during "these 22 years" he regarded himself "as performing services for Ida M. Rhoads." Except for the recitals in the two written instruments of December 2, 1949 there is no evidence admitted by the trial court tending to show what "advice" or services plaintiff rendered to the *decedent* "concerning her personal affairs," as asserted in Count II of his declaration.

At the conclusion of Mr. Reece's testimony the plaintiff rested his case. The defendant then moved: 1) to "strike out all testimony of the plaintiff, Earl Reece, pertaining to the services performed for Woodland Lumber Company and for his testimony pertaining to the officers of the company"; 2) for a dismissal on the ground that the plaintiff had shown no right to relief.[2] The lower court granted the defendant's first motion; it withheld a ruling on the second. In its written opinion of July 31, 1964 the court ordered that judgment be entered in favor of the plaintiff, but only as to services performed during the period from 1930 to 1949. The court reached the conclusion that the plaintiff was not entitled to judgment for services allegedly performed for the period December 2, 1949 to December 30, 1959 by the following process of reasoning: 1. The contract did not recite the performance of any services after December 2, 1949 nor did it contain a promise to perform any

2. Counsel actually moved for a "directed verdict" which we have treated as a Motion to Dismiss under Maryland Rule 535; see Eastern Contractors v. Zinkand, 199 Md. 250, 80 A. 2d 492; Phillips v. Phillips, 215 Md. 28, 136 A. 2d 862.

subsequent to that date. 2. Testimony by the plaintiff as to "future services" would contravene the provisions of Article 35, Section 3 of the Annotated Code. 3. Since there was no proof by someone other than the plaintiff with regard to services performed after December 2, 1949 for the *decedent,* the plaintiff failed to establish a prima facie case as to those "future services."

The appellee disputes the propriety of the action taken by the court below with respect to the defendant's first motion. He urges us to hold that that court erred in striking the exhibits and testimony relative to the work performed by S. Earl Reece for the Woodland Lumber Company. These issues, however, are not properly before us. In the absence of a cross-appeal the appellee ordinarily cannot complain of adverse or erroneous rulings on the evidence and pleadings, even though they may be harmful or prejudicial. *Harrison v. Robinette,* 167 Md. 73, 83, 173 A. 2d 60 (1934) ; *Mezzanotte Constr. Co. v. Gibons,* 219 Md. 178, 183, 148 A. 2d 399 (1959) ; and see cases collected in 2 M.L.E., *Appeals,* section 353. In any event he does not urge a reversal or modification of the judgment (as, for example, to allow a recovery for the period 1949 to 1960, the year of Miss Rhoads' death) but only that it be affirmed, so the point would appear to be academic.

The parties to this litigation entertain divergent theories of the law applicable to the facts as established. The defendant administrator, appellant here, contends that the plaintiff must offer proof that he performed the terms of the contract, that is, that he in fact rendered the services for which he now seeks to recover. He then postulates Art. 35, Sec. 3 as an insurmountable barrier, prohibiting plaintiff Reece from testifying: a) that he made a contract with Ida M. Rhoads; b) that he rendered services for her (before or after the date of the contract) ; or c) that he rendered services to the corporation (on the theory that, since decedent owned the large majority of the shares, the fiction of the corporate entity should be disregarded). The appellant also believes it encumbent upon the plaintiff to show affirmatively that he has *not* been paid. In view of the inability of the plaintiff to testify to the necessary facts, and in the absence of other, independent testimony, the appellant submits

that the plaintiff, Reece, has failed to produce legally sufficient evidence to entitle him to recover.

The appellee, for his part, does not urge any particular interpretation of the Evidence Act upon the Court. Rather, he argues that he has proved the signature on the contracts to be that of the decedent, in the manner prescribed by Code (1964 Cum. Supp.), Article 35, Section 12; that proof of a signature on a contract is prima facie proof of the truth of its contents; that an admission or recital in a written contract (otherwise sufficient) that it was made for a valuable consideration, in the absence of contrary evidence, entitles the plaintiff to judgment. Simply put, the appellee contends that the defendant administrator has failed to disprove the prima facie case established by the recital of a valuable consideration in the contract introduced by the plaintiff. The trial court awarded judgment on this theory.

We think that the plaintiff is right in asserting that a recital of facts which may constitute consideration in an unsealed written agreement, is prima facie evidence of those facts. *Glenn v. Grover*, 3 Md. 212, 228 (1852). And although some courts have said that the promisor is "estopped" to deny the statement that he has received consideration, or that the presumption arising from the recital of consideration is "irrebuttable," most states, including Maryland, hold that the parol evidence rule does not prevent a rebuttal of the truth of that statement by extrinsic evidence. See *Williston, Contracts* (3d ed.) section 115B and cases there collected; 1 *Corbin, Contracts,* section 130. The Restatement of Contracts takes this view: *Restatement, Contracts,* Section 82, comment b states: "A recital that a stated consideration has been given is in every case admissible evidence of the fact, though not generally conclusive." The modern and accepted view is that the parol evidence rule prevents only proof that "the promises and agreements contained in the agreement" were not the promises and agreements of the parties thereto. *Restatement, Contracts,* sections 237, 243, 244. It follows in this case that if the prima facie evidence of consideration created by the recital or admission in the contract—(that S. Earl Reece had performed personal services for Miss Rhoads)—was never rebutted or disproved, then, con-

trary to the defendant's suggestion, the plaintiff was not obligated to offer further, additional proof that he performed those services; and failure to introduce such further evidence of the uncontradicted fact does not require a reversal of the judgment granted below. Because of our conclusion upon this point, we find it unnecessary to consider to what extent Article 35, Section 3 prohibits the plaintiff from testifying to the services performed for Ida M. Rhoads or for the corporation in which she owned a large interest, or to the circumstances inducing and surrounding the making of the written agreements of December 2, 1949.

A question presented by the defendant's motion to dismiss, but which was apparently not argued before or specifically considered by the lower court and which was not briefed or argued before us, is whether the facts recited in the documents constituted sufficient legal consideration to support the promise of Miss Rhoads to pay for the past services of the plaintiff Reece. As we have indicated the documents are not under seal. They were both dated December 2, 1949 and those documents indicate that the services for the Woodland Lumber Company and for Miss Rhoads for the payment for which judgment was rendered, had all been rendered prior to the signing by Miss Rhoads of the two documents. This is recited in both documents. The second document recites that he had not been paid for these services by either the company or Miss Rhoads. In the second document Miss Rhoads promises to pay the plaintiff Reece for those services at the rate of $150.00 a month, without interest. She also promises to pay him for future services rendered the company and her by the plaintiff Reece and she recites that he "agrees to continue future services to the company for my benefit and future personal services to me."

The general rule is that past consideration is insufficient to support a present promise. *Weil v. Free State Oil Company,* 200 Md. 62, 71-72, 87 A. 2d 826, 830 (1952). See 17 Am. Jur. 2d *Contracts,* Section 125. See also 1 *Williston, Contracts* (3rd ed.), Section 142, where it is stated:

> "Accordingly, something which has been given before the promise was made and, therefore, without ref-

660

erence to it, cannot, properly speaking, be legal consideration. * * *

"The doctrine that past consideration is no consideration represents the overwhelming weight of authority and is almost universally followed. This has been the law since early times."

There have been several exceptions, however, to this general principle of law. One of them is that a present promise to pay in consideration of an act previously done at the request of the promisor will be enforceable as supported by sufficient consideration even though that consideration consists of an act previously done. The request of the promisor may be either express or implied. Our predecessors, in *Pool v. Horner*, 64 Md. 131, 133, 20 A. 1036 (1885), quoted with approval from the notes to *Osbourne v. Rogers*, 1 Wm. Saund. 264b that it was a settled rule "that a past consideration is not sufficient to support a subsequent promise, unless there was a request of the party express *or implied*, at the time of performing the consideration; * * *" (emphasis supplied). As no express promise by Miss Rhoads at the beginning of the services in April 1930 is recited in either document, the question arises as to whether a request by Miss Rhoads to the plaintiff Reece to perform the services may be implied. We are of the opinion that such a request may be implied. The services rendered were of a business nature. In the second document Miss Rhoads states that the services were rendered *"for me* at the office of the company *I own"* (emphasis supplied). She owned 685 shares of the entire 750 shares or in excess of 90% of the shares. She states that these services were "rendered *to me and the company for my financial* and personal benefit." (Emphasis supplied). As Professor Williston states in *Williston, Contracts,* Sec. 146:

"Where, however, services are rendered because requested as a matter of business and where consequently there is a contemporaneous promise implied in fact to pay for them, the weight of authority supports the validity of a subsequent promise defining the extent of the promisor's undertaking."

*Pool v. Horner* is cited as one of the cases supporting this legal principle. We hold that the promise to pay for the past services was supported by legal consideration.

There is no evidence in the case which would indicate that the rendition of the services by the plaintiff Reece were presumed to be gratuitous. Although he was the nephew of the deceased promisor, he worked in Baltimore, Maryland, and the offices of the Woodland Lumber Company were in Philadelphia, Pennsylvania. There is no evidence that he was living in the household of his aunt or that the services performed, or to be performed, by him were household services of such a character as to be presumed to have been gratuitously rendered. On the contrary, it appears that they were business services in regard to which the presumption of gratuitous service does not apply. See *Provident Trust Co. v. Massey,* 146 Md. 34, 125 A. 821 (1924). The factual situation in the case at bar is quite different from that in *Marx v. Marx,* 127 Md. 373, 96 A. 544 (1916) relied on by the appellant, where an intention of a father-in-law to pay for nursing services rendered by his daughter-in-law was established by the evidence, even though the parties were members of the same household.

Although the two documents have certain statements testamentary in character, in our opinion they essentially represent contractual obligations which fix the time of performance by Miss Rhoads at the time of her death and from her estate. Our predecessors have held that a promise in a contractual instrument fixing the time for performance at or after death ordinarily will not impair the instrument's validity as a contract. *Junkins v. Sullivan,* 110 Md. 539, 73 A. 264 (1909) ; *Feeser v. Feeser,* 93 Md. 716, 50 A. 406 (1901). See the excellent Annotation. *"Provision for post-mortem payment or performance as affecting instrument's character and validity as a contract."* 1 A.L.R. 2d 1178. The documents are not ineffective as attempted testamentary dispositions superseded by a later will. Counsel for the defendant conceded in the lower court that the instruments were contractual, and not testamentary, instruments.

The claim of the plaintiff Reece was not barred by the provisions of the three-year Statute of Limitations, Code, Art. 57,

Sec. 1. As the amounts were not to be paid until the death of Miss Rhoads and from her estate, the cause of action did not accrue until the time of her death on December 30, 1959. The three-year limitation period then began to run and there is no question that the plaintiff's suit was instituted on April 7, 1961 and well within that limitation period, so that this defense cannot be sustained. *Zahn v. Heil,* 192 Md. 576, 580-581, 64 A. 2d 564 (1949); *Marx v. Marx,* 127 Md. 373, 382, 96 A. 544 (1916), *supra.*

The plaintiff's claim was also timely filed in the estate on August 5, 1960 and suit instituted within the six-month period after the rejection of the claim on October 10, 1960 as required by Code Art. 93, Sec. 119 (as amended by Chapter 12 of the Acts of 1959) and Section 120. Counsel for the appellant properly abandoned the defendant's plea asserting this defense in the lower court and it is not asserted in this Court.

For these reasons, the judgment of the lower court will be affirmed.

> *Judgment affirmed, the appellant to pay the costs from the estate of Ida M. Rhoads.*