Harold J. HAEFFELE, Plaintiff,

v.

HERCULES INCORPORATED, Hercules Incorporated Retirement Income Plan Pension Trust and Bankers Trust Company, as Trustee of the Hercules Incorporated Retirement Income Plan Pension Trust, Defendants.

Civ. A. No. 85–722 MMS.

United States District Court,
D. Delaware.

June 8, 1987.

Richard G. Elliott, Jr., and William W. Bowser, of Richards, Layton & Finger, Wilmington, Del., for plaintiff.

Thomas Reed Hunt, Jr., and Leone L. Ciporin, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Harold J. Haeffele seeks an order directing defendants to permit him to participate in the Hercules Specialty Chemicals Company 1985 Retirement Incentive Program, known as the "Flex–5" program. Plaintiff alleges that his exclusion from the Flex–5 program constitutes a breach of contract and a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Defendants Hercules Incorporated, Hercules Incorporated Retirement Income Plan Pension Trust, and Bankers Trust Company (collectively "Hercules") dispute these allegations, and have moved for summary judgment. For the reasons that follow, defendants' motion will be granted.

## I. FACTS

Plaintiff was employed by Hercules Specialty Chemicals Company ("Specialty Chemicals"), a division of Hercules Incorporated, as vice president of its Food Ingredients and Fragrances Group. On or about January 1, 1985, plaintiff decided to take early retirement effective April 1, 1985. David Hollingsworth, president of Specialty Chemicals, issued a bulletin on January 17, 1985 announcing plaintiff's impending retirement and the appointment of a successor. Because plaintiff was 58 years old at the time and had more than 10 years of credited service, he was eligible for a Reduced Early Retirement Pension under article V of the Hercules Incorporated Retirement Income Plan ("the Hercules Pension Plan").

Beginning in 1984 and continuing through this period, Specialty Chemicals had been exploring ways of reducing its overhead costs. On February 27, 1985, the board of directors of Hercules Incorporated approved the Flex–5 retirement incentive program, designed to reduce payroll costs at Specialty Chemicals by offering to certain of its employees an inducement to retire early. The Hercules board directed the Vice President, Human Resources to make necessary and appropriate amendments to the Hercules Pension Plan.

Under article III of the standard Hercules Pension Plan, employees are eligible for a Normal Retirement Pension at the age of 65. Article IV, however, provides for an Unreduced Early Retirement Pension for employees at least 60 years old and with 10 years or more of credited service, and under article V, employees with at least 10 years of credited service are eligible for a Reduced Early Retirement Pension at age 55. The Flex–5 program modified this scheme by allowing Specialty Chemicals employees retiring on May 1, 1985 to claim an extra five years of age and credited service, increasing their benefits under the Hercules Pension Plan. By its terms, eligibility for the program extended to "Hercules Specialty Chemicals Company full-time salaried employees, who are vested under the Hercules Incorporated Retirement Income Plan as of the offering of this Program on March 4, 1985, and who are not assigned as operations personnel at plant locations."[1] Docket Item ("Dkt.") 36A, Ex. D, ¶ 3. Plaintiff was listed on a computer printout, generated prior to approval of the Flex–5 program by the Hercules board, of employees considered eligible for the program.

A packet of materials describing the Flex–5 program was distributed to Specialty Chemicals employees aged 50 and older, including plaintiff, on or about March 1, 1985. The packet plaintiff received contained the description of the program as approved by the Hercules board, a computer analysis showing how plaintiff would benefit from the program, and a form entitled "Application for Retirement Incentive." The application recited "I understand that by electing to accept the Company's offer to provide additional benefits to me in consideration of my decision to retire or to terminate employment, my election will be irrevocable and may not be changed at any later time." Dkt. 37A, Ex. E. On March 4, 1985, plaintiff signed and returned the application.[2]

On March 7, 1985, Hollingsworth issued a memorandum addressed to plaintiff and nine other senior Specialty Chemicals executives. The memorandum said the distributed materials on the Flex–5 program "failed to explicitly state the exclusion of top executives of our group" and notified plaintiff and the others "that they are *not*

---

1. The description of the program provided that "[t]he Company shall have the right to modify, terminate or suspend this Program at any time; however, no such action shall affect benefit entitlements already approved." Docket Item ("Dkt.") 36A, Ex. D, ¶ 8.

2. At the bottom of the application, below the space for the applicant's signature, was another space for a signature, preceded by the words "The foregoing application is approved and accepted. Your effective date of retirement will be ___." Dkt. 37A, Ex. E. The Flex–5 program provided that "[t]he Company may, at its sole discretion, defer the retirement date and benefit commencement date hereunder for up to six (6) months while an appropriate replacement is selected and/or trained." Dkt. 36A, Ex. D, ¶ 5.

eligible to participate." Dkt. 37A, Ex. F. Despite his exclusion from the Flex–5 program, plaintiff did not reconsider his January 1, 1985 decision to take early retirement, and currently receives Reduced Early Retirement Pension benefits.

In September 1985, an appendix C was added to the Hercules Pension Plan, formally amending it to reflect the Flex–5 program. Not until October 29, 1986, however, was appendix C itself formally amended to exclude executives of Specialty Chemicals at the vice presidential level or above, in order to "clarify the intent of the Company at the time of the establishment of the Plan." Dkt. 42, Ex. B.

Plaintiff brought suit for the additional benefits he would receive as a participant in the Flex–5 program. Count I of the complaint alleges that "[u]pon acceptance of the Flex–5 Program by Plaintiff on March 4, 1985, a binding, valid and enforceable contract was entered into between Plaintiff and defendant Hercules." Dkt. 1, ¶ 12. Count II alleges that as a "participant" in the Flex–5 program plaintiff could bring a civil action under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and that under the statute the denial of Flex–5 benefits to plaintiff is arbitrary and capricious.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) permits a court to render summary judgment if it is "show[n] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nevertheless, "when a motion is made and supported, the nonmoving party must produce specific facts showing that there is a genuine issue for trial, rather than resting upon the assertions of pleading." *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1190, 89

L.Ed.2d 305 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The Court finds as a matter of law that no contract existed between plaintiff and Hercules, that the denial of Flex–5 benefits to plaintiff was not arbitrary and capricious, and that Hercules' motion for summary judgment must be granted.

### A. Was Hercules Contractually Bound to Pay Flex–5 Benefits to Plaintiff?

■ Plaintiff alleges that on March 4, 1985 an enforceable contract arose for the payment of benefits to plaintiff under the Flex–5 program. As a preliminary matter, the Court must address whether state or federal law governs plaintiff's contract claim. Section 514(a) of ERISA provides that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Thus, ERISA preempts state contract law in the pension plan area. *See Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir.1986); *Gilbert v. Burlington Indus.*, 765 F.2d 320, 326–28 (2d Cir.1985), *aff'd mem. sub nom. Roberts v. Burlington Indus.*, —— U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Van Orman v. American Ins. Co.*, 680 F.2d 301, 311 (3d Cir.1982). Because ERISA does not expressly address the issues of contract formation presented by this case, the Court will apply federal common law as "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Van Orman*, 680 F.2d at 312 (quoting *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593, 93 S.Ct. 2389, 2396, 37 L.Ed.2d 187 (1973)); *see Airco Indus. Gases v. Teamsters Health & Welfare Pension Fund*, 618 F.Supp. 943, 950–51 (D.Del.1985).

■ For the following reasons, the Court finds as a matter of federal common law that although the Flex–5 application may have constituted an offer, plaintiff was not

in the group toward which the offer was directed, nor was the purported contract supported by bargained for consideration. Consequently, no contract arose on March 4, 1985 and plaintiff cannot be considered a "participant" in the Flex–5 program entitled to bring an action under section 502(a)(1)(B) of ERISA.

### 1. Was the Flex–5 Application an Offer?

Hercules asserts that the Flex–5 application plaintiff received on or about March 1, 1985 was merely an invitation to deal, not an offer which upon acceptance would give rise to an enforceable contract. In support of this contention, Hercules notes that at the bottom of the application form, below the space for the applicant's signature, was another signature space. Just above this second signature space was the notation "The foregoing application is approved and accepted. Your effective date of retirement will be _____." Dkt. 37A, Ex. E. Hercules argues that no contract could arise until an agent of Hercules countersigned the application, relying on the familiar principle that "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Restatement (Second) of Contracts* § 26 (1981).

In this case, however, there is evidence indicating that Hercules did not intend the second signature to be a further manifestation of assent to the bargain. The instructions printed on the Flex–5 application stated, *inter alia*, "[t]he fully completed application must be received by Mr. K.A. Wag-

ner, Vice President, Human Resources no later than the close of business on April 3, 1985" and "[a] copy of your acknowledged application will be returned to you along with the effective date of your retirement/termination." Dkt. 37A, Ex. E. These statements and the notation above the second signature space reflect Hercules' authority under the Flex–5 program to "defer the retirement date and benefit commencement date for up to six (6) months while an appropriate replacement is selected and/or trained." Dkt. 36A, Ex. D, ¶ 5; *see* LaQuinta Deposition, Dkt. 37A, Ex. O, at 8. The function of the second signature therefore may well have been simply to acknowledge timely receipt of the application and to fix a retirement date.

Two other features of the Flex–5 application would support the conclusion it was an offer. First, the application itself makes reference to "the Company's offer," which the applicant may elect "to accept." Dkt. 37A, Ex. E. Second, the application recites that the applicant's "election will be irrevocable and may not be changed at any later time." *Id.* Deposition testimony indicates this provision was intended to prevent applicants from revoking an election after the application was signed and returned.[3] *See* Wagner Deposition, Dkt. 37A, Ex. R, at 53–54; Carrington Deposition, Dkt. 37A, Ex. J, at 56–57. As such, the provision is inconsistent with the assertion that the completed application was merely an offer by the applicant and not a binding acceptance of Hercules' offer.

Nevertheless, in view of the space for a second signature on the Flex–5 application, the Court finds that a genuine issue of material fact remains as to whether the application constituted an offer.[4]

---

**3.** The written description of the Flex–5 program provided that "[a]ll *approved* elections shall be irrevocable; the employe shall then be deemed a 'participant.'" Dkt. 36A, Ex. D, ¶ 3 (emphasis added). Neither the Flex–5 application nor the testimony of deposition witnesses, however, indicated that irrevocability was conditioned upon approval.

**4.** Plaintiff, in addition to arguing that the Flex–5 application required no further manifestation of assent by Hercules, argues that as a matter of law, a pension plan constitutes an offer that

may be accepted through performance of the conditions specified in the offer. The cases cited by plaintiff all involved pension plans under which the offeree performed by continuing in the employment of the offeror. *See Hoefel v. Atlas Tack Corp.,* 581 F.2d 1 (1st Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); *Gladden v. Pargas, Inc.,* 575 F.2d 1091 (4th Cir.1978); *Rochester Corp. v. Rochester,* 450 F.2d 118 (4th Cir.1971); *Marvel v. Dannemann,* 490 F.Supp. 170 (D.Del.1980); *Hardy v. H.K. Porter Co.,* 417 F.Supp. 1175 (E.D.Pa.

### 2. Was Plaintiff in the Group Toward Which the Offer was Directed?

Hercules contends that top executives and those who had already decided to retire were not intended to be eligible for the Flex–5 program. Thus, even if the Flex–5 application was an offer, plaintiff was not in the group toward which the offer was directed. *See Restatement (Second) of Contracts* § 29(1) (1981) ("The manifested intention of the offeror determines the person or persons in whom is created a power of acceptance."); *id.* § 52 ("An offer can be accepted only by a person whom it invites to furnish the consideration.").

As distributed to Specialty Chemicals employees on March 1, 1985, the Flex–5 program contained no express exclusion for top executives. *See* Dkt. 36A, Ex. D, ¶ 3. Hercules offers evidence suggesting that those responsible for developing the Flex–5 program intended nevertheless that top executives be ineligible. *See* Giacco Deposition, Dkt. 37A, Ex. L, at 28; Hollingsworth Deposition, Dkt. 36A, Ex. I, at 24–25; Fajans Deposition, Dkt. 36A, Ex. G, at 27–28; McCarthy Deposition, Dkt. 36A, Ex. J, at 23–27. Even assuming that this necessarily self-serving testimony confirms Hercules' intent to have excluded plaintiff and other top executives, the drafters of the Flex–5 program did not make this intent manifest in the application and accompanying materials. If the language is unambiguous, "trial courts are bound to interpret contractual terms to give effect to the parties' 'objective manifestations of their intent' rather than attempt to ascertain their subjective intent." *Griesmann v. Chemical Leaman Tank Lines*, 776 F.2d 66, 72 (3d Cir.1985) (quoting *Mellon Bank v. Aetna Business Credit*, 619 F.2d 1001, 1009 (3d Cir.1980)); *cf. Edwards v. Wilkes-Barre Publishing Co. Pension Trust*, 757 F.2d 52, 57 (3d Cir.) (trustee's interpreta-

tion of a pension plan controls if it is reasonable and faithful to the plan's actual language), *cert. denied*, —— U.S. ——, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985). Therefore, insofar as plaintiff was a top executive, he was in the group toward which the Flex–5 offer was directed.

In contrast to the purported ineligibility of top executives, the character and objectives of the Flex–5 program make manifest Hercules' intent to exclude employees, such as plaintiff, who had already decided to retire. The description of the program states that its purpose is "[t]o provide retirement incentives" and that it is offered "as an inducement to encourage retirement." Dkt. 36A, Ex. D, ¶¶ 1–2. Obviously, it is unnecessary to offer a retirement incentive to an employee who will retire without inducement. Because plaintiff had decided to retire before the Flex–5 offer was made, he was not in the group invited to accept the offer.

Despite the clear implication that may be drawn from the purposes of the Flex–5 program, plaintiff was listed on the computer printout of eligible employees and received the packet of Flex–5 materials.[5] Plaintiff thus maintains, in effect, that a genuine issue of material fact remains as to whether the Flex–5 program was intended to exclude those who had previously decided to retire. I disagree. In the context of pension plans governed by ERISA, "[w]here both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *see Edwards*,

---

1976); *Miller v. Dictaphone Corp.*, 334 F.Supp. 840 (D.Or.1971). Performance under the Flex–5 program, however, consists not of continued employment, but of the decision to take early retirement. *See* Dkt. 37A, Ex. E. Even if the Flex–5 application was an offer, plaintiff could not have accepted through performance because he had already decided to retire when the offer was made.

5. Deposition testimony indicates that those responsible for generating the computer printout had no other involvement with the Flex–5 program. As a result, the list was based only on ages and service dates and did not take into account plaintiff's prior decision to retire. *See* Trzaskos Deposition, Dkt. 37A, Ex. Q, at 10–14.

575 F.2d at 57; *Bruch v. Firestone Tire & Rubber Co.*, 640 F.Supp. 519, 524 & n. 3 (E.D.Pa.1986).

The Court therefore finds as a matter of law that plaintiff was not in the group toward which the Flex–5 offer was directed.

### 3. Was the Contract Supported by Consideration?

Plaintiff decided to retire on or about January 1, 1985; received the Flex–5 application on or about March 1, 1985; and returned the completed application on March 4, 1985. Hercules argues that even if the Flex–5 application was an offer plaintiff could have accepted, his pre-existing decision to retire could not support any resulting contract, as "past consideration is no consideration." *Murray v. Lichtman*, 339 F.2d 749, 752 n. 5 (D.C.Cir.1964); *see Estate of Bogley v. United States*, 514 F.2d 1027, 1033, 206 Ct.Cl. 695 (1975); *Reece v. Reece*, 239 Md. 649, 212 A.2d 468, 474 (1965); *Community Sports v. Denver Ringsby Rockets*, 429 Pa. 565, 240 A.2d 832, 836 n. 5 (1968).

In *Hayes v. Plantations Steel Co.*, 438 A.2d 1091 (R.I.1982), the plaintiff employee had announced his intention to retire in six months. About one week before his retirement, an agent of the defendant employer told plaintiff that the company "would take care" of him. *Id.* at 1093. Thereafter, plaintiff received an annual payment from defendant. When these payments ceased four years later, plaintiff sued for breach of contract. Reversing the lower court's judgment for plaintiff, the Rhode Island Supreme Court held:

> Plantations' promise to pay Hayes a pension is quite clearly not supported by any consideration supplied by Hayes. Hayes had announced his intent to retire well in advance of any promise, and therefore his intention to retire was arrived at

without regard to any promise by Plantations.... In deciding to retire, Hayes acted on his own initiative.

*Id.* at 1095.

Similarly, the Flex–5 program was by its own terms offered "in consideration of [the] decision to retire or to terminate employment," Dkt. 37A, Ex. E, a decision plaintiff had announced two months before the offer was made. The decision to retire, sought by Hercules in exchange for its promise of increased pension benefits, was not made by plaintiff in exchange for that promise, and thus cannot constitute consideration.

Although his decision to retire was made without reference to the Flex–5 program, plaintiff contends he supplied consideration by performing other acts after the Flex–5 offer was made. Plaintiff asserts his performance of required administrative steps toward actual retirement and his continued employment until retirement are valid consideration and support the promise to pay Flex–5 benefits. It is hornbook law, however, that to constitute consideration, a performance or return promise must be bargained for. *See* 1 Williston, *Contracts* §§ 99–103 (3d ed. 1957); 1 Corbin, *Contracts* §§ 109–124 (1963 & Supp. 1980). In other words, "the promisor must manifest an intention to induce the performance or return promise and to be induced by it, and ... the promisee must manifest an intention to induce the making of the promise and to be induced by it." *Restatement (Second) of Contracts* § 81, comment a (1981). The Flex–5 program manifested Hercules' intention only to induce the decision or promise to retire, not to induce continued employment or the taking of other steps toward retirement. These other acts therefore cannot serve as consideration.[6]

The Court finds as a matter of law that there was no consideration to support any

---

**6.** Plaintiff's affidavit states:

At the time I advised Mr. Fajans [of my intention to retire], I made the conscious decision not to apply for benefits under the Hercules Retirement Income Plan.... I made this conscious decision because I was aware that upper management of Speciality Chemicals and Hercules were considering possible

amendments to the Hercules Retirement Plan. Though I had no idea as to whether or not I would be eligible for the benefits of any amendment to the Hercules Retirement Plan, I made the conscious decision not to apply under the then existing Hercules Retirement Plan until after the amendments might be announced.

contract arising from plaintiff's completion of the Flex–5 application.

### B. Was the Denial of Flex–5 Benefits to Plaintiff Arbitrary and Capricious?

■ Under section 502(a)(1)(B) of ERISA, a pension plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Judicial review of the actions of pension plan trustees in such cases is limited to determining whether the actions were arbitrary and capricious. *Geib v. New York State Teamsters Conference Pension & Retirement Fund,* 758 F.2d 973, 978 (3d Cir.1985); *Rosen v. Hotel & Restaurant Employees & Bartenders Union,* 637 F.2d 592, 596 & n. 5 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). Because the Court has determined that plaintiff is not contractually entitled to receive benefits under the Flex–5 program, it is highly doubtful that he is a program "participant" empowered under section 502(a)(1)(B) to allege an arbitrary and capricious denial of benefits.[7] Nevertheless, the court will assume that plaintiff is a participant in the Flex–5 program for the purpose of analyzing Hercules' obligations under ERISA.

Plaintiff's ERISA claim amounts to an assertion that Hercules acted arbitrarily and capriciously in interpreting the Flex–5 program to exclude those who had already decided to retire and in modifying the program to exclude top executives. In *Baker v. Lukens Steel Co.,* 793 F.2d 509 (3d Cir. 1986), the Third Circuit Court of Appeals set out the standard for determining whether modifications or amendments to a pension plan are arbitrary and capricious. Four factors must be considered:

1) the extent to which the participant was an intended beneficiary of the plan;

2) the extent to which the amendment is applied retroactively to strip the participant of previously earned credits;

3) the extent to which he was notified of the amendment;

4) the extent to which it is shown that actuarial concerns require denial of benefits to him.

*Id.* at 513 (citing *Agro v. Joint Plumbing Indus. Bd.,* 623 F.2d 207, 210 (2d Cir.1980)). For the following reasons, the Court finds as a matter of law that the modification of the Flex–5 program to exclude plaintiff was not arbitrary and capricious.[8]

### 1. To What Extent was Plaintiff an Intended Beneficiary of the Flex–5 Program?

In this case, the question of whether and to what extent plaintiff was an intended

Haeffele Affidavit, Dkt. 38, ¶ 2. Plaintiff may well have been aware when he decided to retire that the Hercules Pension Plan would be amended in some fashion. His decision to postpone applying for benefits, however, cannot be said to have been bargained for by Hercules, and is not consideration.

7. ERISA defines "participant" as

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). Only those who are participants or beneficiaries within the meaning of ERISA have standing to sue under section 502(a)(1)(B). *See Yancy v. American Petrofina,* 768 F.2d 707, 708 (5th Cir.1985).

8. Plaintiff urges the Court to apply the standard set out in *Devine v. Xerox Corp.,* —— F.Supp. ——, (D.Del. Dec. 11, 1986), in lieu of the *Baker* test. In *Devine,* Judge Farnan applied a different four-factor analysis to determine whether a denial of severance pay was arbitrary and capricious: "(1) the uniformity with which Xerox construed the severance pay plan; (2) whether Xerox's interpretation of the plan was contrary to its terms; (3) the fairness and reasonableness of the interpretation; and (4) unanticipated costs." *Id.,* at —— (citing *Carr v. Trustees Hotel & Restaurant Employees & Bartenders International Union Pension Fund,* 585 F.Supp. 949, 952 (E.D.Pa.1984)). Unlike *Devine,* which was concerned only with plan interpretation, the case before the Court also involves the actual modification of an existing plan. Moreover, to the extent the Court must consider Hercules' interpretation of the Flex–5 program, the analysis may be subsumed under the first factor of the *Baker* test.

beneficiary of the Flex–5 program is essentially a question of plan interpretation. Hercules argues that top executives and those who had already decided to retire were not intended to be eligible for the Flex–5 program. The Court has previously held that the Flex–5 program, as distributed to Specialty Chemicals employees on March 1, 1985, must be construed to exclude employees, such as plaintiff, who had already decided to retire.[9]

As originally promulgated, the Flex–5 program contained no express exclusion for top executives. In light of the program's unambiguous language, *see Griesmann v. Chemical Leaman Tank Lines,* 776 F.2d 66, 72 (3d Cir.1985), plaintiff was an intended beneficiary insofar as he was a top executive. The retirement incentive purposes of the Flex–5 program, however, give rise to the clear implication that those who had already decided to retire were not its intended beneficiaries. *See* Dkt. 36A, Ex. D, ¶¶ 1–2. The trustees' interpretation of a pension plan must be permitted to control if it is reasonable and consonant with the plan's actual language. *See Edwards v. Wilkes-Barre Publishing Co. Pension Trust,* 757 F.2d 52, 57 (3d Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985); *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The Court therefore finds that plaintiff was not an intended beneficiary of the Flex–5 program.

### 2. To What Extent was the Modification Applied Retroactively to Strip Plaintiff of Previously Earned Benefits?

The Hercules board approved the Flex–5 program on February 27, 1985; plaintiff signed and returned the Flex–5 application on March 4, 1985; and the Hollingsworth memorandum notifying plaintiff and other top executives that they were not eligible to participate in the Flex–5 program issued on March 7, 1985. Plaintiff contends the

modification that excluded him from the program amounted to "rug-pulling." That is, it was applied retroactively to strip plaintiff of his previously earned Flex–5 benefits.

In *Brug v. Pension Plan of Carpenters Pension Trust Fund,* 669 F.2d 570 (9th Cir.), *cert. denied,* 459 U.S. 861, 103 S.Ct. 135, 74 L.Ed.2d 116 (1982), on which plaintiff relies, an employee retired and applied for disability retirement under the provisions of the existing pension plan. The plan trustees delayed action on the former employee's application until the provision under which she was eligible for benefits was rescinded. The application was then denied. The court framed the issue as "whether the Trustees, during the pendency of Brug's application, could retroactively amend the plan so as to disqualify her as a beneficiary." *Id.* at 574. Holding that "the Trustees did not have the discretionary authority to apply [the amendment] so as to preclude Brug's eligibility for pension benefits that had vested in the meantime," the court found the trustees' action arbitrary and capricious. *Id.* at 575; *see Danti v. Lewis,* 312 F.2d 345, 349 (D.C.Cir.1962) (pension application must be reviewed under the eligibility standards in effect at the time it is submitted).

Plaintiff argues *Brug* parallels the case before this Court. Indeed, Hercules denied plaintiff's application for Flex–5 benefits in part because of a modification adopted after the application was filed. Moreover, the Hercules Pension Plan provides that modifications are permissible but that to the extent trust funds are available participants' benefits "may not be reduced, canceled, or suspended" as a result. Dkt. 37A, Ex. G, art. XIII; *see Brug,* 669 F.2d at 574.

The instant case is, however, distinguishable in one critical respect from cases in which courts have held retroactive modifications of pension plans to be arbitrary and capricious. Plaintiff, because he had already decided to retire, was ineligible to participate in the Flex–5 program *before* as well as after the program was modified to

---

**9.** *See* pages 1306 – 07, *supra.*

exclude top executives. *See Brug*, 669 F.2d at 574 ("There is no question that Brug met the eligibility requirements for the disability pension at the time she retired and applied for the pension."); *Danti*, 312 F.2d at 349 ("the application was sufficient to establish eligibility under [the trustees'] own standards at the time it was received"); *see also Geib v. New York State Teamsters Conference Pension & Retirement Fund*, 758 F.2d 973, 977 (3d Cir.1985) (distinguishing *Brug* from cases in which the challenged amendment does not change plaintiffs' pension eligibility). The March 7, 1985 memorandum cannot be said to have pulled the rug out from under plaintiff in the sense of retroactively stripping him of benefits to which he previously was entitled.[10]

### 3. To What Extent was Plaintiff Notified of the Modification?

ERISA requires the administrator of a pension plan to provide notice of any "material modification" of the plan "not later than 210 days after the end of the plan year in which the change is adopted to each participant...." ERISA §§ 102(a)(1), 104(b)(1), 29 U.S.C. §§ 1022(a)(1), 1024(b)(1). Because plaintiff was immediately notified that the Flex–5 program had been modified to exclude top executives, notice was timely. *See Baker v. Lukens Steel Co.*, 793 F.2d 509, 511–13 (3d Cir.1986).

Plaintiff, however, raises another issue related to notice. The Hollingsworth memorandum notifying plaintiff and other top executives that they were not eligible to participate in the Flex–5 program issued on March 7, 1985. Not until October 29, 1986, however, was appendix C of the Hercules Pension Plan formally amended to exclude executives of Specialty Chemicals at the

vice presidential level or above. Plaintiff asserts the March 7, 1985 memorandum is by itself without effect, relying on the rule against enforcing oral or informal written modifications of pension plans governed by ERISA. *See Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986); *Johnson v. Central States, Southeast & Southwest Areas Pension Fund*, 513 F.2d 1173, 1174–75 (10th Cir.1975). Essentially, plaintiff's argument appears to be that the March 7, 1985 memorandum rendered the modification of the Flex–5 program arbitrary and capricious because the memorandum did not formally amend the program in accordance with ERISA.[11]

The purpose of the rule against enforcing oral or informal written modifications of pension plans is to ensure record notice to all plan participants. As the *Nachwalter* court explained:

> A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements. This problem would be exacerbated by the fact that these oral agreements often would be made many years before any attempt to enforce them.

805 F.2d at 960 (citations omitted).

This rationale is not implicated in the instant case. Actual, if informal, notice of the Flex–5 program's modification was given to plaintiff at the time the change was adopted. Whether or not the terms of the March 7, 1985 memorandum were enforceable, plaintiff was not prejudiced by the

---

**10.** Hercules attempts to distinguish *Brug* on the grounds (1) that the amendment in *Brug* had deprived the employee of all rather than merely part of her pension benefits and (2) that the modification of the Flex–5 program took effect before plaintiff actually retired and was therefore not applied retroactively to divest him of eligibility for benefits. *See Cator v. Herrgott & Wilson, Inc.*, 609 F.Supp. 12, 16 (N.D.Cal.1984). Given the *Brug* court's broad framing of the issue, 669 F.2d at 574 ("whether the Trustees,

during the pendency of [plaintiff's] application, could retroactively amend the plan so as to disqualify her as a beneficiary"), these distinctions are unconvincing.

**11.** *See also* Hercules Pension Plan, Dkt. 37A, Ex. G, at art. XV ("No waiver or modification of this Plan can be made by any officer, agent or employe of the Company unless authorized by the Board.").

ensuing delay in formally amending the program to reflect these terms.[12] *See Agro v. Joint Plumbing Indus. Bd.,* 623 F.2d 207, 211 (2d Cir.1980). The Court therefore finds that as applied to plaintiff the modification was not arbitrary and capricious as a result of any improper notice.

#### 4. To What Extent was Denial of Benefits to Plaintiff Required by Actuarial Concerns?

Hercules concedes that actuarial concerns did not motivate the exclusion of top executives from the Flex–5 program. Nevertheless, if other concerns more directly related to the particular goals of the Flex–5 program reasonably required that plaintiff and other top executives be made ineligible, modification of the program would not be arbitrary and capricious. *See Morse v. Stanley,* 732 F.2d 1139, 1144 (2d Cir.1984) (trustees' action not arbitrary and capricious where in accordance with policy of discouraging employment with competing firms); *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 600 (2d Cir.) (trustees' action not arbitrary and capricious where in accordance with policy of inducing independent bargaining units to join plan), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

The Flex–5 program was designed to reduce payroll costs at Specialty Chemicals by encouraging certain of its employees to retire early. Deposition testimony establishes, however, that no reduction in the ranks of top executives was considered necessary or desirable.[13] *See* Giacco Deposition, Dkt. 37A, Ex. L, at 28; Fajans Deposition, Dkt. 36A, Ex. G, at 27–28. Indeed, a replacement for plaintiff was appointed soon after plaintiff announced his intention to retire. The modification of the Flex–5 program to remove the incentive for top executives to retire early, and the consequent denial of benefits to plaintiff, was therefore in accordance with the goals of the program.

### III. CONCLUSION

For the foregoing reasons, the Court holds that no contract existed between plaintiff and Hercules, and that the denial of benefits to plaintiff was not arbitrary and capricious. An order will be entered granting Hercules' motion for summary judgment.

---

**12.** Hercules argues that the formal amendment of October 29, 1986 effectively ratified the March 7, 1985 memorandum and thus related back to the earlier date. Because the enforceability of the March 7, 1985 memorandum is unconnected with the question of proper notice, the Court does not address the issue of ratification.

**13.** Similarly, the Flex–5 program as originally promulgated expressly excluded employees assigned as operations personnel at plant locations, because there was no need to reduce the numbers of such employees. *See* Wagner Deposition, Dkt. 36A, Ex. K, at 32–33.