839 F.2d 952
 9 Employee Benefits Ca 1813
 Harold J. HAEFFELE, Appellant,
v.
HERCULES INCORPORATED, Hercules Incorporated Retirement
Income Plan Pension Trust and Bankers Trust
Company, as Trustee of the Hercules
Incorporated Retirement Income
Plan Pension Trust, Appellees.
 No. 87-3469.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 17, 1987.
Decided Feb. 17, 1988.
 
 Thomas Reed Hunt, Jr. (argued), Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for appellees.
 Richard G. Elliott, Jr. (argued), William W. Bowser, Richards, Layton & Finger, Wilmington, Del., for appellant.
 Before GIBBONS, Chief Judge, SLOVITER and COWEN, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 Harold Haeffele, a retired employee of Hercules Incorporated (Hercules) appeals from a summary judgment in favor of Hercules and Bankers Trust Company, the trustee of Hercules Retirement Income Plan and Trust, in his suit charging that Hercules' refusal to extend benefits to him under an early retirement incentive program was a breach of contract (Count I) and a violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001 et seq. (Count II). He contends that disputed issues of material fact are apparent in the summary judgment record which preclude summary judgment on either count. Our review is plenary. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We will reverse.
 
 I.
 The Summary Judgment Record
 
 2
 From the pleadings, depositions, exhibits, and affidavits on file a factfinder could find that Haeffele was employed by the Hercules Specialty Chemicals Company, a division of Hercules, as Vice President of the Fragrance and Food Ingredients Group. In 1984 the Specialty Chemicals division had approximately 10,000 employees, and Hercules' management was seeking to improve its profitability. Among the steps considered toward that end was a reduction in the size of the division's workforce to be induced by offering a special incentive to encourage early retirement. The task of devising an incentive program was assigned to Kenneth A. Wagner, Vice President of Human Resources. After studying the early retirement incentive programs of a number of companies, he recommended an amendment to the Hercules Retirement Income Plan, which eventually came to be known as the 1985 Flex-5 Retirement Incentive Program (Flex-5). Flex-5 adds five years of age and credited service for the purpose of calculating benefits under the Hercules Retirement Plan, increasing retirement benefits, and thereby providing an incentive to retire early. Flex-5 was to be offered only to employees of the Specialty Chemicals division.
 
 
 3
 On February 27, 1985, the Board of Directors of Hercules adopted Flex-5, and authorized such amendments to the Hercules Retirement Income Plan as might be deemed necessary or appropriate to implement it. Under Flex-5, eligible employees of the Specialty Chemicals division could agree to retire on May 1, 1985, receiving the additional years of age and credited service referred to above. They were entitled to elect various payment options. In Section 8 of Flex-5, Hercules reserved the right to terminate or suspend the program at any time, except that no such action could affect benefit entitlements already approved. The covered employees were stated to be:
 
 
 4
 Hercules Specialty Chemicals Company full-time salaried employees, who are vested under the Hercules Incorporated Retirement Income Plan as of the offering of this Program on March 4, 1985, and who are not assigned as operations personnel at plant locations....
 
 
 5
 When Flex-5 was adopted, Haeffele was vested under the Hercules Incorporated Retirement Income Plan, and he was not assigned to plant operations.
 
 
 6
 On February 20, 1985, prior to the Board action adopting Flex-5, a computer printout was generated listing the Specialty Chemicals division employees who were considered to be eligible. This list included Haeffele. Management used this list to identify employees who might take early retirement. Management also used the list to prepare individual reports showing each eligible participant the benefits available to him or her under Flex-5. Among these, an individual report was prepared for Haeffele.
 
 
 7
 The terms of Flex-5 were not disclosed to Specialty Chemical employees until March 1, 1985. On that date a memorandum was sent to the employees identified on the computer-generated list, advising them that a one-time incentive retirement plan was being offered to them. Each of those employees, including Haeffele, received a packet of documents, containing descriptions of the Flex-5 program and benefits and an application for participation. In addition, meetings were scheduled at which employees could ask questions about the program.
 
 
 8
 On March 4, 1985, Haeffele signed an application to participate in the Flex-5 program. The application was never accepted. Instead, David I. Hollingsworth, then the president of the Specialty Chemicals division, orally informed Haeffele about "the tentative decision that he would not be eligible" for Flex-5. Hollingsworth deposition, JA-87. The tentative decision was made at a meeting between Hollingsworth and Al Giacco, one of Hercules' top managers. At that meeting Giacco concurred in Hollingsworth's view that the "executive group" in the Specialty Chemicals division should be excluded from Flex-5, but expressed concern that Hercules had not been more specific in the announcement of that plan with respect to such an exclusion. It was agreed that Hollingsworth "would contact Harold [Haeffele] and inform him of the lack of likelihood that he was eligible pending further discussion of the subject with Human Resources and with the law department." Hollingsworth deposition JA-85. Haeffele was not told that his exclusion was for any reason other than that the "executive group" was not covered by Flex-5.
 
 
 9
 On March 7, 1985, Hollingsworth issued a memorandum advising Haeffele and all other senior executives at the Specialty Chemicals division that they were ineligible for the Flex-5 program. The entire memorandum reads:The information which has been distributed describing our incentive retirement program failed to explicitly state the exclusion of top executives of our group. Therefore, I would like to notify the addressee of this communication that they are not eligible to participate.
 
 
 10
 (emphasis in original). Again, no mention was made of any reason for exclusion from Flex-5 coverage other than top executive status.
 
 
 11
 The Board's February 27, 1985 resolution adopting Flex-5 directed the Human Resources Department to amend the Hercules Retirement Income Plan, "as may be deemed necessary or appropriate. The Plan is to become effective March 4, 1985 and terminate March 29, 1985." Minutes of February 27, 1985 Meeting of Board. Despite the March 4-March 29 effective dates, the Human Resources Department did not formally amend the Hercules Retirement Income Plan until September, 1985. At that time it added an appendix C to the plan incorporating Flex-5, containing the March 4-March 29 eligibility dates for election to take early retirement, effective between May 1, 1985 and November 1, 1985. The amended plan defined eligible participants as:
 
 
 12
 Hercules Specialty Chemicals Company salaried employees not located at plant locations who are vested under the provision of the Hercules Incorporated Retirement Income Plan.
 
 
 13
 Thus the September 1985 formal Flex-5 amendment to the Hercules Incorporated Income Plan did not contain any exclusion of top executives or any other exclusion. It was not until after discovery was completed in this case that a vice-president in the Human Resources Department asked the Board to adopt "clarifying language" with respect to Flex-5 eligibility. In response to that request the Board on October 29, 1986 adopted a resolution amending appendix C to provide that the Flex-5 program shall not extend to Specialty Chemicals division employees at the level of Vice President or above.
 
 
 14
 While the March 4-March 29 early retirement window provided by Flex-5 was open, 122 Specialty Chemical division employees accepted early retirement. This number exceeded the Hercules' management estimate that only 48 would elect the plan. The great number of acceptances resulted in financial benefits to Hercules in the range of $9 million, exceeding the original estimate for savings of about $2.6 million. Of those who sought early retirement under Flex-5 only Haeffele was rejected.
 
 
 15
 Although his Flex-5 application was rejected, Haeffele filed an application for retirement under the Hercules Incorporated Income Program in April of 1985. He is receiving benefits under that plan which are significantly lower than would be paid if Flex-5 applies to him. Haeffele admitted in his deposition testimony that he had already decided, on about January 1, 1985, that he would retire some time in that year. At the time he made that decision he was not aware of the Hercules' management decision to adopt Flex-5. Haeffele did not at that time, however, take any of the formal steps required by the Hercules Incorporated Retirement Income Plan to implement his subjective decision to retire. In an affidavit he explains that he refrained from filing for retirement benefits between the time of his decision and the time he intended actually to retire because he was aware that Hercules' management was considering a possible plan amendment, and he wanted to be included, if eligible, in any benefits provided by such an amendment. He made known his subjective intention to retire to Robert G. Fajans, Executive Vice President of Hercules and even began to participate in the training of a successor, prior to Hercules' announcement of the Flex-5 plan. However, the first formal step he took toward retirement was the filing of a Flex-5 application with the Human Resources Department on March 4, 1985.
 
 II.
 
 16
 Was Summary Judgment Proper?
 
 A. Contract Issues
 
 17
 Haeffele contends that the distribution to him of the Flex-5 packet of materials, including an acceptance form, was an offer to him, which he accepted in writing on March 4. Hercules contends that summary judgment on this claim was required because: (1) the Flex-5 packet was not an offer; (2) if it was an offer it was not directed to executives at the level of Vice President or above; and (3) any promise by Hercules was not supported by consideration. The district court, 662 F.Supp. 1302, held that summary judgment could not be granted on grounds (1) or (2), but must be granted on ground (3). We hold that summary judgment cannot be granted on any of the three grounds tendered by Hercules.
 
 
 18
 Hercules supports its contention that no offer was intended by a reference to the acceptance form included in the packet, which provides one space for a signature by the employee and a second space for a signature on behalf of Hercules. From this Hercules argues that the entire packet was not an offer, but merely an invitation to deal. See Restatement (Second) of Contracts Sec. 26 (1981). However, a jury could find, and perhaps must find, from the instruction that "[a] copy of your acknowledged application will be returned to you along with the effective date of your retirement/termination," that the second signature served only to acknowledge that the employee's election had been timely received, and was effective. Nothing in the Flex-5 packet suggests that anything was required in order to take advantage of the plan other than signing and returning the application. Moreover, the application refers to "the company's offer," which the applicant could elect "to accept," and states that such election is irrevocable. Clearly, therefore, the district court properly rejected Hercules' contention that it is entitled to summary judgment because there was no offer.
 
 
 19
 Hercules supports its contention that no offer was addressed to executives above the level of Vice President by reference to the October 29, 1986 board minutes "clarifying" the Flex-5 eligibility clause, and to Hollingsworth's subjective intention, prior to March 4, 1985, not to include employees at that level. The intention of an offeror which is significant for contract purposes, however, is that which is objectively manifested to the offeree prior to the time the latter acts upon the offer. See Leeds v. First Allied Connecticut Corp., 521 A.2d 1095, 1097 (Del.Ch.1986); "Industrial America," Inc. v. Fulton Industries, Inc., 285 A.2d 412, 415 (Del.Supr.1971); Griesman v. Chemical Leaman Tank Lines, 776 F.2d 66, 72 (3d Cir.1985); Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d 1001, 1009 (3d Cir.1980). In this case the objective manifestation is the language of the Flex-5 eligibility clause distributed to Haeffele prior to March 4, and that language unambiguously includes him. Moreover, even if the court were free to disregard this objective manifestation of Hercules' intent, Hollingsworth's testimony suggests that prior to March 4 it was not clear that Hercules' management, even subjectively, intended the eligibility clause to exclude top executives. Thus even the assertion of an uncommunicated, subjective intention would raise genuine fact issues to be resolved at trial. The post-litigation Board action in "clarifying" the eligibility clause is not controlling as a matter of law. Thus the district court properly rejected Hercules' contention that it is entitled to summary judgment because the offer was not made to Haeffele.
 
 
 20
 The Hercules contention that the district court did accept is that there is no consideration for Hercules' Flex-5 promise because on January 1, 1985 Haeffele had already made the decision to retire. We hold that summary judgment on this ground was improper. We note, first, that the offer itself does not except employees who have already made a subjective decision to retire, or even persons who have disclosed that decision to their superiors in the company. So far as the record discloses, no inquiry was made of any employee of the Specialty Chemicals division, even of Haeffele, respecting a pre-existing intention to retire. Moreover, the computer-generated list of eligible employees on which Hercules' management relied to assess the impact of an early retirement plan does not refer to persons who have subjectively determined to retire early. Even the post-litigation October 29, 1985 amendment to the Flex-5 eligibility clause does not exclude persons who had or announced an intention to retire prior to March 4. Second, Haeffele's affidavit suggests that while he had the intention of taking early retirement, he made a conscious decision to refrain from implementing that decision until after a rumored plan amendment became a reality. It is not suggested anywhere in the summary judgment record that Haeffele could have been forced to complete the formalities required in order to implement his expressed intention. Thus his submission on March 4, 1985 of a signed application for early retirement could be found by a jury to be consideration for the promises contained in the Flex-5 offer. The summary judgment on Haeffele's contract count must therefore be reversed.
 
 B. ERISA Issues
 
 21
 In the ERISA count Haeffele challenges the decision of the plan administrator to deny him Flex-5 benefits. The parties are not of one mind about the precise nature of the plan administrator's action, and thus about the proper scope of judicial review of that action. Despite its ruling on the contract claim, the district court assumed, for purposes of Haeffele's claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), that he was a plan participant or beneficiary who could sue to recover benefits. Using the terms "interpretation" and "modification" more or less interchangeably, the district court held that the denial of Flex-5 benefits was not "arbitrary or capricious." In supporting that conclusion, the court attributed to the plan administrator an interpretation of Flex-5, as originally formulated, as inapplicable to persons who had already decided to retire. The court also took note of the October 29, 1985 amendment, but held that this was not an arbitrary and capricious retroactive stripping of Haeffele's benefits, because he never was eligible for the benefits, having already decided to retire. Thus, looking at the plan administrator's action as either an interpretation or an amendment, the district court sustained it, solely on the ground that the original version of Flex-5 was inapplicable to persons who had already decided to retire.
 
 
 22
 There is no evidence in the summary judgment record that the plan administrator interpreted the Flex-5 eligibility clause as excluding persons who had already decided to retire. The only evidence as to Hercules' reason for denying Flex-5 benefits to Haeffele points to the intent to exclude employees at the level of Vice President or higher. Thus the district court's attempt to attribute to the plan administrator an interpretation of the plan, and to defer to that interpretation, is, on the record before us, simply insupportable. What the court did was to make its own interpretation of the Flex-5 eligibility requirements--an interpretation that the plan administrator never made--and then to attribute that interpretation to the plan administrator. The substance of the court's interpretation of the plan for ERISA purposes, moreover, suffers from the same defect as found in its contract interpretation; reading in an "intention to retire" exclusion where none appears in the Flex-5 documents. The ERISA count dismissal, therefore, is not properly based on the ground of an "intention to retire" exclusion.
 
 
 23
 Whether the ERISA count could be dismissed by a summary judgment, therefore, depends on whether an exclusion of employees at the level of Vice President or above could lawfully be applied to Haeffele. The scope of judicial review of the plan administrator's action in that respect depends on whether the action to exclude Haeffele on the basis of his executive status is regarded as an interpretation or construction of the plan, or, alternatively, as an amendment to it. Where, as here, the plan administrator has a financial interest in the outcome, the interpretation or construction of a plan is subject to de novo review by the district court, and by this court as well. Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 145 (3d Cir.1987). By contrast, an amendment to a plan by a plan administrator is reviewed by the more deferential scope of judicial review set forth in Baker v. Lukens Steel Co., 793 F.2d 509 (3d Cir.1986). Under that standard an amendment may be found to be arbitrary and capricious taking into account:
 
 
 24
 1) the extent to which the participant was an intended beneficiary of the plan;
 
 
 25
 2) the extent to which the amendment is applied retroactively to strip the participant of previously earned credits;
 
 
 26
 3) the extent to which he was notified of the amendment;
 
 
 27
 4) the extent to which it is shown that actuarial concerns require denial of benefits to him.
 
 
 28
 Id. at 513.
 
 
 29
 Under either the de novo scope of review applied to plan interpretation or construction by a financially interested plan administrator, or the more deferential arbitrary and capricious standard of review applied to a plan amendment, summary judgment in Hercules' favor on the record before us was impermissible. The eligibility provision in Flex-5 as originally drawn, and in place on March 4, 1985 when Haeffele signed and filed his acceptance, is unambiguous. It covers him. From Hollingsworth's testimony and that of other Hercules' witnesses a jury could infer that the decision to exclude employees at the level of Vice President and above was not an interpretation but an afterthought, arrived at only after Haeffele had accepted the unambiguous offer. While the memorandum of October 20, 1986 from the Human Resources Department to Hercules' Board recites that "although not expressly stated in the Plan, it was the intent of the company to exclude otherwise eligible employees of the Specialty Chemicals Company at the level of Vice President or above," there is ample evidence which could cause a factfinder to discredit this self-serving post-litigation declaration. Moreover, there is no evidence in the summary judgment record suggesting, much less requiring, a finding that Haeffele knew or could have known of Hercules' unexpressed limitation on eligibility. Thus a factfinder could conclude that Haeffele was in fact eligible on March 4, 1985 when his application was filed. The remaining question then would be whether the October 29, 1986 amendment could be applied to him. There is no evidence that actuarial concerns had anything to do with the amendment. There is evidence that he was notified of the amendment only after he filed his application for Flex-5 benefits. If he is found to be covered as of March 4, 1985, the amendment stripped him retroactively of the benefits of Flex-5. Thus, considering these factors enumerated in Baker v. Lukens Steel Co., supra, it could be determined that the amendment of the Plan, which affected Haeffele and no other employee (he was the only Vice President to apply between March 4 and March 29), was arbitrary and capricious.
 
 
 30
 The summary judgment against Haeffele on his ERISA Count, therefore, must also be reversed.
 
 III.
 Conclusion
 
 31
 The summary judgment on both the breach of contract count and the ERISA count will be reversed, and the case will be remanded for further proceedings.